# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39673**

———————————

**UNITED STATES**
*Appellee*

**v.**

**James A. AUMONT**
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 20 November 2020

———————————

*Military Judge:* Wesley A. Braun.

*Sentence:* Sentence adjudged 15 January 2019 by GCM convened at Hurlburt Field, Florida. Sentence entered by military judge on 25 February 2019: Dishonorable discharge, confinement for 8 months, and reduction to E-1.

*For Appellant:* Major Rodrigo M. Caruço, USAF.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Major Jessica L. Delaney, USAF; Mary Ellen Payne, Esquire.

Before THE COURT EN BANC.

Judge ANNEXSTAD delivered the opinion of the court, in which Judge RICHARDSON and Judge MEGINLEY joined. Senior Judge LEWIS filed a separate opinion concurring in part and in the result, in which Judge D. JOHNSON joined. Senior Judge POSCH filed a separate opinion concurring in part and in the result. Chief Judge J. JOHNSON filed a separate opinion concurring in part and dissenting in part, in which Senior Judge MINK, Judge KEY, and Judge CADOTTE joined.

––––––––––––––––––––––

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

––––––––––––––––––––––

ANNEXSTAD, Judge:

A military judge sitting alone as a general court-martial convicted Appellant, in accordance with his pleas and pursuant to a pretrial agreement (PTA), of one specification of attempting to commit a lewd act on a person he believed to be a child under 16 years of age by intentionally exposing his genitalia on divers occasions, and one specification of attempting to commit a lewd act on a person he believed to be a child under 16 years of age by intentionally communicating indecent language on divers occasions, both in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880.[1] Appellant was sentenced to a dishonorable discharge, confinement for eight months, and reduction to the grade of E-1. The PTA had no effect on the adjudged sentence.

On 8 February 2019, the convening authority signed a "Decision on Action" memorandum in Appellant's case. Paragraph 1 of the convening authority's decision memorandum states the convening authority takes "no action in the case of *United States v.* [*Senior Airman*] *James M. Aumont.*" The convening authority's decision memorandum also noted that he consulted with his staff judge advocate and denied Appellant's request for a 30-day deferment of mandatory forfeitures under Rule for Courts-Martial (R.C.M.) 1103. On 14 February 2019, Appellant acknowledged receipt of the convening authority's decision. Appellant did not file a motion under R.C.M. 1104(b)(2)(B) that affords the Appellant the opportunity to address any potential errors in the action of the convening authority.

On 25 February 2019, the military judge signed an entry of judgment (EoJ). The EoJ lists the sentence as a dishonorable discharge, confinement for eight months, and reduction to the grade of E-1. It further states that on 8 February 2019, the convening authority "took no action in this case." Additionally, the military judge noted in the EoJ that the findings and sentence reflect "all post-

––––––––––––––––––––––

[1] Reference to the punitive article is to the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*); all other references to the Uniform Code of Military Justice (UCMJ) and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*).

trial actions by the convening authority and all judicial post-trial rulings, orders or other determinations, are hereby entered into the record and reflect the judgment of this court-martial."

On 23 August 2019, Appellant raised one issue for appeal pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982): whether Appellant is entitled to sentence relief because of impermissible conditions of post-trial confinement in violation of Articles 12 and 55, UCMJ, 10 U.S.C. §§ 812, 855, and the Eighth Amendment to the United States Constitution.[2] We also consider two additional issues, not raised by Appellant, identified during this court's Article 66(d), UCMJ, 10 U.S.C. § 866(d) review: whether the convening authority's decision memorandum contains error when the convening authority took "no action" on the sentence and Appellant was convicted of an offense committed prior to 1 January 2019; and whether Appellant is entitled to relief for facially unreasonable appellate delay in accordance with *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006). We find Appellant's convictions both legally and factually sufficient, and no error materially prejudicial to the substantial rights of Appellant occurred. We affirm the findings and sentence.

## I. BACKGROUND

On 6 January 2018, an Air Force Office of Special Investigations (AFOSI) Special Agent (SA) operated online in an undercover capacity as a 14-year-old female. The SA used a fictitious personality known as "Molly Turner," and placed an advertisement on the "Craigslist" advertising website in the "Casual Encounters – w4m"[3] section. In order to place the advertisement, the SA acknowledged that the person making the post was over 18 years old. On 6 January 2018, Appellant sent a response, via email, to the advertisement posted by the SA who was posing as the fictitious "Molly Turner." At some point on 6 January 2018, the conversation between Appellant and the SA moved to "Kik," a commercial messaging application. During the conversation the SA informed Appellant that he was a girl named "Molly" who was 14, almost 15 years old. On several occasions between 6 January 2018 and 7 January 2018, Appellant sent the person he believed to be "Molly" photographs of his exposed genitalia and two videos of him masturbating. Additionally, on several occasions between 6 January 2018 and 15 January 2018, Appellant communicated indecent language to the person he believed to be "Molly." These communications captured in email and via the "Kik" messaging application, to include the

---

[2] U.S. CONST. amend. VIII.

[3] In his guilty plea inquiry, Appellant testified that "w4m" is short for "woman for man."

photographs and videos, formed the basis for the charge and specifications at trial.

After Appellant's trial on 15 January 2019, he was inprocessed at the Okaloosa County Department of Corrections in Crestview, Florida. Appellant was confined at the Okaloosa County Department of Corrections from 15 January 2019 to 19 April 2019 at which time he was transferred to a military confinement facility.

On 23 January 2019, Appellant's trial defense counsel (TDC) submitted a petition for clemency to the convening authority requesting a "moderate amount of clemency." Specifically, TDC requested the convening authority defer the mandatory forfeitures of pay for a period of 30 days. Additionally, in this request TDC briefly mentioned that the conditions at the Okaloosa County Department of Corrections were "less than ideal—certainly far below the standards of any military corrections facility." No specific deficiencies of the confinement facility were raised and no specific relief was requested regarding Appellant's confinement. A personal statement from Appellant was included as part of the clemency request. In the personal statement, Appellant requested the convening authority approve a bad-conduct discharge instead of a dishonorable discharge. Appellant's personal statement did not raise any issue with the confinement facility.

## II. DISCUSSION

### A. Post-trial Confinement Conditions

#### 1. Additional Background

On appeal, Appellant submitted a declaration to this court. In the declaration, Appellant contends the conditions of his confinement at the Okaloosa County Department of Corrections warrant relief. Appellant stated he spent approximately the first 12 days of his confinement in administrative segregation with one other inmate in his cell. He further stated he was then moved to general population where he was housed with two other inmates in the same cell. During his time in general population, Appellant stated he was threatened with physical violence by a fellow inmate. Appellant then stated he informed a guard that he feared for his life and was eventually moved back to administrative segregation before being placed in a smaller section of general population where the facility housed inmates convicted of felonies, including violent crimes. Finally, Appellant states that during his time in confinement he repeatedly asked corrections officers for toiletries and toilet paper and that no toiletries or toilet paper were ever provided.

Appellant contends that he is entitled to relief due to the fact that he was intentionally removed from segregation and placed in general population in

immediate association with foreign nationals who were not members of the armed forces, in direct violation of Article 12, UCMJ.[4] Additionally, Appellant argues that he is entitled to relief because he was physically threatened with harm by another inmate, and that the detention staff willfully failed to provide basic necessities, specifically toiletries and toilet paper, in violation of the Eighth Amendment and Article 55, UCMJ. Finally, Appellant argues that even if he did not exhaust his administrative remedies that relief can still be provided in unusual or egregious circumstances.

In response to Appellant's assignment of error, the Government obtained a declaration from TM, the Inmate Program and Accreditation Manager for Okaloosa County. In the declaration, TM advised that her management duties included the Okaloosa County Department of Corrections facility where Appellant was detained. TM confirmed that Appellant had notified the classification staff that another inmate had threatened him. TM also stated that as a standard protocol, Appellant was encouraged to identify the inmate making threats, but Appellant did not identify the inmate. TM further stated Appellant, due to his housing concerns, was moved in a "timely and proper manner" on his word to another housing section. TM stated that all personnel at the confinement facility followed proper procedures. Regarding Appellant's allegations that he was denied toiletries and toilet paper, TM explained that toiletries are routinely distributed twice per week and that corrections officers are instructed to provide toilet paper whenever an inmate asks, regardless of whether the request is formally submitted. TM stated that official records do not indicate that Appellant submitted any formal requests for toiletries or toilet paper and that any verbal requests he made to the confinement staff were handled as "swiftly as practicable."

The Government argues that Appellant's claim under the Eighth Amendment and Article 55, UCMJ, fails under *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006), and that Appellant's claim under Article 12, UCMJ, fails because Appellant produced no evidence that he was housed with foreign nationals who were not members of the armed services and that he failed to exhaust the administrative procedures available to him. Finally, the Government responds that Appellant has produced no evidence of unusual or compelling

---

[4] Appellant's *Grostefon* brief cites the version of Article 12 in the 2016 *MCM*. Because Appellant's confinement began in 2019, the version of Article 12 in the 2019 *MCM* is applicable in this case and states that "[n]o member of the armed forces may be placed in confinement in immediate association with—(1) enemy prisoners; or (2) other individuals—(A) who are detained under the law of war and are foreign nationals; and (B) who are not members of the armed forces."

circumstances that warrant application of this court's authority to grant sentence relief under Article 66(d), UCMJ, 10 U.S.C. § 866(d).

We agree with the Government that Appellant has provided no evidence that he was housed with foreign nationals or that the general population included foreign nationals.[5] Therefore, we find it unnecessary to discuss any purported violation of Article 12, UCMJ.

**2. Law**

As an initial matter, we considered the declarations from both Appellant and TM to resolve Appellant's claims under the Eighth Amendment and Article 55, UCMJ. *See United States v. Jessie*, 79 M.J. 437, 444–45 (C.A.A.F. 2020). Additionally, because Appellant generally raised his conditions in confinement in his clemency matters, we also considered both declarations in determining whether we should exercise our Article 66(d), UCMJ, authority to provide "appropriate" sentence relief and whether Appellant's post-trial confinement conditions made his sentence "inappropriately severe." *See United States v. Cink*, No. ACM 39594, 2020 CCA LEXIS 208, at *18–20 (A.F. Ct. Crim. App. 12 Jun. 2020) (unpub. op.); *United States v. Macaluso*, No. ACM S32556, 2020 CCA LEXIS 171, at *8 (A.F. Ct. Crim. App. 27 May 2020) (unpub. op.).

To the extent there are contradictions between Appellant's declaration and TM's declaration, we considered whether a post-trial evidentiary hearing was required to resolve a factual dispute. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. Dubay*, 37 C.M.R. 411, 413 (C.M.A. 1967) (per curiam). We are convinced such a hearing is unnecessary. Even if we resolve any contradictions in Appellant's favor, the alleged conditions would not result in our granting relief. *See Ginn*, 47 M.J. at 248.

We review de novo whether an appellant has been subjected to impermissible post-trial confinement conditions in violation of the Eighth Amendment or Article 55, UCMJ. *United States v. Wise*, 64 M.J. 468, 473 (C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001)). "A servicemember is entitled, both by statute and the Eighth Amendment, to protection against cruel and usual punishment." *United States v. Avila*, 53 M.J. 99, 101 (C.A.A.F. 2000) (citations omitted). In general, we apply "the [United States] Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, except in circumstances where . . . legislative intent to provide

---

[5] Appellant's counsel raised in the Appendix of its merits brief an argument that Appellant was placed in confinement in immediate association with foreign nationals who were not members of the armed forces. Appellant did not state this in his declaration and the record contains no evidence to support the fact that Appellant was housed with foreign nationals who were not members of the armed forces.

greater protections under [Article 55]" is apparent. *Id.* (citation omitted). "[T]he Eighth Amendment prohibits two types of punishments: (1) those 'incompatible with the evolving standards of decency that mark the progress of a maturing society' or (2) those 'which involve the unnecessary and wanton infliction of pain.'" *Lovett*, 63 M.J. at 215 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976)).

The Supreme Court has held that the Eighth Amendment "'does not mandate comfortable prisons,' . . . but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). This includes protecting prisoners from violence committed by other prisoners. *Id.* at 833 (citations omitted).

The Supreme Court has held that a prison official violates the Eighth Amendment when two conditions are met. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "A prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes*, 452 U.S. at 347). For a claim such as Appellant's "based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).

The second condition is that the prison official must have a "sufficiently culpable state of mind." *Id.* (quoting *Wilson*, 501 U.S. at 297). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 302–03).

The United States Court of Appeals for the Armed Forces (CAAF) has held that a violation of the Eighth Amendment is shown by demonstrating:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [Appellant's] health and safety; and (3) that [Appellant] "has ex-

hausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ, 10 U.S.C. § 938 [2000]."[6]

*Lovett*, 63 M.J. at 215 (third and fourth alteration in original) (footnotes omitted) (quoting *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)). The burden to make this showing rests upon Appellant. *Id.* at 216.

A military prisoner's "burden to show deliberate indifference requires him to show that 'official[s] [knew] of and disregard[ed] an excessive risk to inmate health or safety; the official[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference.'" *Id.* (alterations in original) (quoting *Farmer*, 511 U.S. at 837).

The CAAF emphasized, "[a] prisoner must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions." *Wise*, 64 M.J. at 469 (citation omitted). "This requirement 'promot[es] resolution of grievances at the lowest possible level [and ensures] that an adequate record has been developed [to aid appellate review].'" *Id.* at 471 (alterations in original) (quoting *Miller*, 46 M.J. at 250). Except under some unusual or egregious circumstance, an appellant must demonstrate he or she has exhausted the prisoner grievance process provided by the confinement facility and has petitioned for relief under Article 138, UCMJ. *White,* 54 M.J. at 472 (citation omitted). This court reviews the "'ultimate determination' of whether an Appellant has exhausted administrative remedies de novo, as a mixed question of law and fact." *Wise*, 64 M.J. at 471 (citing *United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F. 2001)).

As the CAAF noted in *Wise*, "[s]ince a prime purpose of ensuring administrative exhaustion is the prompt amelioration of a prisoner's conditions of confinement, courts have required that these complaints be made while an appellant is incarcerated." *Id.* (citing *United States v. White*, No. ACM 33583, 1999

---

[6] Article 138, UCMJ, 10 U.S.C. § 938, provides that

> [a]ny member of the armed forces who believes himself wronged by his commanding officer, and who, upon due application to that commanding officer, is refused redress, may complain to any superior commissioned officer, who shall forward the complaint to the officer exercising general court-martial jurisdiction over the officer against whom it is made. The officer exercising general court-martial jurisdiction shall examine into the complaint and take proper measures for redressing the wrong complained of; and he shall, as soon as possible, send to the Secretary concerned a true statement of that complaint, with the proceedings had thereon.

CCA LEXIS 220, at *4 (A.F. Ct. Crim. App. 23 Jul. 1999) (unpub. op.) ("holding that solely raising conditions of confinement complaints in post-release clemency submissions is inadequate to fulfill the requirement of exhausting administrative remedies and that 'after the appellant has been released from confinement . . . we have no remedy to provide'" (alteration in original)), *aff'd,* 54 M.J. at 475).

### 3. Analysis

We need not determine whether Appellant has met his burden under the first *Lovett* factor—an objectively, sufficiently serious act or omission resulting in the denial of necessities—as we find he cannot meet his burden on the second and third factors which we describe below.

Appellant failed to sustain his burden of establishing a culpable state of mind on the part of Okaloosa County Department of Corrections officials amounting to deliberate indifference to his health and safety. Appellant claims that when he was moved to a general population section, he was threatened by another inmate and feared for his life. However, in his own declaration, Appellant confirms that after he made his concerns known to corrections officers he was moved back to administrative segregation. This demonstrates the opposite of deliberate indifference and shows that corrections officials acted in a deliberate manner to protect Appellant's health and ensure his safety. Next, Appellant alleged that he repeatedly asked corrections officials for toiletries and toilet paper and that none were ever provided. TM's declaration states that toiletries were distributed twice a week, and that toilet paper was distributed on request whenever an inmate asks, regardless of whether the request is formally submitted. TM stated that any verbal requests Appellant made were handled as "swiftly as practicable" and that there is no record of any formal request for toiletries and toilet paper. Resolving the factual dispute in Appellant's favor, Appellant, and the record as a whole, does not establish that Appellant went without toilet paper for three months, or that he did not have toilet paper and toiletries, only that the "multiple corrections officers" he asked did not provide them. Furthermore, Appellant has not demonstrated that any formal requests for toiletries and toilet paper were ever submitted. We find Appellant has failed to demonstrate that prison officials were deliberately indifferent to any conditions that might have violated the Eighth Amendment and Article 55, UCMJ, and that Appellant has failed to meet this prong under *Lovett.*

Appellant has also failed to show that he exhausted the prisoner-grievance system and that he petitioned for relief under Article 138, UCMJ. The standard under *Lovett* is not "effectively" filing an Article 138, UCMJ, complaint and prisoner grievance; it is actually exhausting those administrative remedies.

9

Exhaustion requires Appellant demonstrate that two paths of redress have been attempted, each without satisfactory result. *See Wise*, 64 M.J. at 471. The first time Appellant complained to his command about his post-trial confinement conditions was in his clemency submission. In that submission, Appellant's counsel commented that the conditions of confinement were "less than ideal" and were "certainly far below the standards of any military correctional facility." Appellant did not ask for any relief from his command regarding his confinement conditions. Had he filed an Article 138, UCMJ, complaint and a prisoner grievance while in the civilian confinement facility, the record would reflect what action, if any, his command and prison officials took in response. Appellant failed to make his grievances known to his command and thus made it impossible for them to ameliorate, let alone record, those grievances. There is also no evidence Appellant made any formal requests for toiletries and toilet paper with prison officials or his command, only that the "multiple corrections officers" he asked didn't provide them. In the lone instance where Appellant felt physically threatened by another inmate and made prison officials aware of his safety concerns, he was moved to another section on his word to ensure his safety. We find Appellant has failed to exhaust his administrative remedies and thus fails to meet this prong under *Lovett*.

Finding that Appellant failed to meet his burden of establishing a culpable state of mind on the part of Okaloosa County Department of Corrections officials amounting to deliberate indifference to his health and that Appellant failed to exhaust his administrative remedies, Appellant is not entitled to relief under either the Eighth Amendment or Article 55, UCMJ.

We have also considered whether Appellant's assertions warrant sentence relief under our Article 66(d), UCMJ, authority in the absence of an Eighth Amendment or Article 55, UCMJ, violation. *See Gay*, 75 M.J. at 268. We find that they do not. Appellant's case did not involve a legal error such as the one present in *Gay*, where the appellant was unnecessarily kept in solitary confinement in a civilian facility at the request of an Air Force official. *Id*. at 268–69. The conditions Appellant describes do not constitute one of those very rare circumstances in which Appellant's sentence has been rendered inappropriate as a matter of law. *See Ferrando*, 77 M.J. at 517.

## B. Convening Authority's Decision on Sentence

### 1. Additional Background

We next consider whether the convening authority's decision memorandum contained error when the convening authority took "no action" on the sentence and Appellant was convicted of an offense committed prior to 1 January 2019. On 29 July 2020, we ordered the Government to show cause as to why the

record of trial should not be remanded for further action in accordance with Executive Order 13,825, § 6(b)(1), 83 Fed. Reg. 9889, 9890 (8 Mar. 2018).

The Government submitted a timely response on 17 August 2020 and opined that we should review this case consistent with our decision *United States v. Finco*, No. ACM S32603, 2020 CCA LEXIS 246 (A.F. Ct. Crim. App. 27 Jul. 2020) (unpub. op.), and apply a plain error standard of review in assessing whether Appellant was entitled to corrective action when the convening authority failed to take action in a case. The Government further opined that remand is unnecessary where Appellant suffered no prejudice as a result of the error, or in the alternative that this court correct the EoJ itself by removing the portion of the judgment which states the convening authority took no action. The Government acknowledged this court has the authority to order the correction of the EoJ.

**2. Law**

Proper completion of post-trial processing is a question of law this court reviews de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citation omitted). Interpretation of a statute and a R.C.M. provision are also questions of law that we review de novo. *United States v. Hunter,* 65 M.J. 399, 401 (C.A.A.F. 2008) (citation omitted); *United States v. Martinelli,* 62 M.J. 52, 56 (C.A.A.F. 2005) (citation omitted).

Executive Order 13,825, § 6(b), requires that the version of Article 60, UCMJ, 10 U.S.C. § 860, "in effect on the date of the earliest offense of which the accused was found guilty, shall apply to the convening authority . . . to the extent that Article 60: (1) requires action by the convening authority on the sentence. . . ." 83 Fed. Reg. at 9890. The version of Article 60, UCMJ, in effect on 6 January 2017, stated "[a]ction on the sentence of a court-martial shall be taken by the convening authority." 10 U.S.C. § 860(c)(2)(A) (*Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*)).

In *United States v. Barrick*, No. ACM S32579, 2020 CCA LEXIS 346 (A.F. Ct. Crim. App. 30 Sep. 2020) (unpub. op.), our court recently found that a convening authority's decision to "take no action" was the equivalent of action. In coming to this conclusion, the court noted:

> Air Force Instruction [(AFI)] 51-201, *Administration of Military Justice*, Section 13D (18 Jan. 2019), correctly advises convening authorities to grant relief as circumscribed by the applicable version of Article 60, UCMJ. Additionally, it advises convening authorities to specify "no action" if not granting relief, which would include effecting "action" under the applicable version of Article 60, UCMJ.

*Id.* at *3–4.

Appellate courts can use surrounding documentation to interpret an otherwise unclear convening authority action, including looking outside the four corners of the action's language. *See United States v. Politte*, 63 M.J. 24, 26 (C.A.A.F. 2006) (citing *United States v. Loft*, 10 M.J. 262, 268 (C.M.A. 1981)).

**3. Analysis**

Turning to the facts before us, we disagree with the Government that this case should be reviewed consistent with a three-judge panel's decision in *Finco,* where under similar facts, our court found error where the convening authority took "no action on the sentence," and found such error to be plain and obvious. To the contrary, we find no error, and "no indicia of confusion over, or objection to, this new way to effect an old rule." *Barrick*, unpub. op. at *4.

In the present case, the record demonstrates that Appellant submitted clemency matters to the convening authority on 23 January 2019. In his matters, Appellant asked the convening authority for a "moderate amount" of clemency—to defer the mandatory forfeitures of pay for 30 days. On 8 February 2019, the convening authority's decision to "take no action" was memorialized in his "Decision on Action" memorandum to the military judge. Consistent with the AFI 51-201, Section 13D, the convening authority expressed his decision to not grant relief as "no action." Additionally, the convening authority specifically denied Appellant's request for a 30-day deferment of mandatory forfeitures under R.C.M. 1103. We also note that the convening authority's ability to grant clemency for the portion of the sentence relating to the reduction in grade did not change with the amendment to Article 60; therefore, it is a leap to assume the convening authority misunderstood, or was confused about his ability to set aside or mitigate the adjudged reduction in grade. Finally, the convening authority could not affect the most serious portions of Appellant's sentence—confinement and the dishonorable discharge. On 25 February 2019, the military judge signed the EoJ, reflecting the sentence as adjudged and all post-trial actions by the convening authority.

We find that the convening authority's decision met the legacy requirements of Article 60, UCMJ (2016 *MCM*), requiring action. We also find the decision complied with the provisions of R.C.M. 1109 requiring convening authority action only when affecting the sentence. Here the convening authority's decision to provide no relief at action was "clear and unambiguous." *See Politte*, 63 M.J. at 25–26 (footnote omitted). There is no indication in the record that the military judge or the parties were confused as to the convening authority's decision to grant no relief as again, the sentence memorialized in the EoJ was the same as the sentence adjudged at trial and neither party moved for correction of the action or the EoJ. *See* R.C.M. 1104(b)(2)(B) and (C). Furthermore,

this issue was not raised by Appellant as an assignment of error in his submissions to this court. For these reasons, we find no error in the convening authority's action.

### C. Timeliness of Appellate Review

Additionally, we consider whether Appellant is entitled to relief for a facially unreasonable appellate delay. *Moreno*, 63 M.J. at 135 (citations omitted); *United States v. Tardif*, 57 M.J. 219, 223–24 (C.A.A.F. 2002). We decline to grant such relief.

#### 1. Law

We review de novo whether an appellant has been denied the due process right to speedy appellate review. *Moreno*, 63 M.J. at 135 (citations omitted). A presumption of unreasonable delay arises when appellate review is not completed and a decision rendered within 18 months of a case being docketed. *Id.* at 142. A presumptively unreasonable delay triggers an analysis of the four factors laid out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citations omitted). A presumptively unreasonable delay satisfies the first factor, but the Government "can rebut the presumption by showing the delay was not unreasonable." *Id.* at 142. Assessing the fourth factor of prejudice, we consider the interests of "prevention of oppressive incarceration;" "minimization of anxiety and concern of those convicted;" and "limitation of the possibility that . . . grounds for appeal, and . . . defenses . . . might be impaired." *Id.* at 138–39 (citations omitted).

#### 2. Analysis

Appellant's case was docketed with the court on 18 April 2019. The delay in rendering this decision after 18 October 2020 is presumptively unreasonable. The reasons for the delay include the time required for Appellant to file his brief on 23 August 2019, and the Government to file its answer 23 September 2019. Additionally, on 29 July 2020, we issued a show cause order to the Government, and the Government's timely response was filed on 17 August 2020. On 22 October 2020, this court voted to take this case *en banc* and the corresponding order was issued on 23 October 2020. Appellant was not confined, did not assert his right to timely appellate review, and has made no specific claim of prejudice. We find none.

Finding no *Barker* prejudice, we also find the one-month delay is not so egregious that it "adversely affects the public's perception of the fairness and integrity of the military justice system." *See United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). As a result, there is no due process violation. *See id.*

Regarding any relief under *Tardif*, in this case we determine that no such relief is warranted in the absence of a due process violation. *See Tardif*, 57 M.J. at 223–24; *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). In *Tardif*, the CAAF recognized that "a Court of Criminal Appeals has authority under Article 66(c) to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a)." 57 M.J. at 224 (citation omitted). Furthermore, we as a service Court of Criminal Appeals are required by Article 66(d), UCMJ, to determine which findings of guilty and the sentence or part thereof "should be approved." 10 U.S.C. § 866(d); *see Tardif*, 57 M.J. at 224. Considering all the facts and circumstances of Appellant's case, we decline to exercise our Article 66(d), UCMJ, authority to grant relief for the delay in completing appellate review.

### III. CONCLUSION

The findings and sentence entered are correct in law and fact, and no error materially prejudicial to the substantial rights of the Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d) (*Manual for Courts-Martial, United States* (2019 ed.)). Accordingly, the findings and sentence are **AFFIRMED**.[7]


LEWIS, Senior Judge (concurring in part and in the result), joined by Judge D. JOHNSON:

I concur with the opinion of the court to affirm the findings and the sentence in Appellant's case. However, I disagree with my esteemed colleagues on the path to this result and therefore write separately.

Beginning with the assignment of error, I agree that Appellant is not entitled to relief for the conditions of his post-trial confinement. Consistent with the opinion of the court, I considered the declarations submitted by Appellant

---

[7] Although not raised by Appellant, we note the EoJ fails to document Appellant's request for deferment of mandatory forfeitures for 30 days, and the convening authority's action on Appellant's request for deferment as required by R.C.M. 1111(b)(3)(A). Appellant has not claimed any prejudice as a result of this error, and we find none. We direct the military judge, through the Chief Trial Judge, Air Force Trial Judiciary, to have a detailed military judge correct the entry of judgment accordingly and prior to completion of the final order under R.C.M. 1209(b) and Air Force Instruction 51-201, *Administration of Military Justice*, Section 14J (18 Jan. 2019).

and TM—the Inmate Program and Accreditation Manager for Okaloosa County, Florida—which are attached to the record to resolve Appellant's claims under the Eighth Amendment,[1] and Articles 12 and 55, UCMJ, 10 U.S.C. §§ 812, 855.[2] *See United States v. Jessie*, 79 M.J. 437, 444–45 (C.A.A.F. 2020). Unlike the opinion of the court, I assumed without deciding that I could consider these same declarations in concluding that Appellant's sentence was not inappropriately severe. *See United States v. DeFalco*, No. ACM 39607, 2020 CCA LEXIS 164, at *16 n.9 (A.F. Ct. Crim. App. 21 May 2020) (unpub. op.); *United States v. McGriff*, No. ACM 39306, 2018 CCA LEXIS 567, at *24–25 (A.F. Ct. Crim. App. 11 Dec. 2018) (unpub. op.), *rev. denied*, 78 M.J. 487 (C.A.A.F. 2019).

Next, I also agree with the opinion of the court that Appellant is not entitled to relief for the facially unreasonable appellate delay. *See United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006). Further, I agree with the opinion of the court in denying Appellant relief under *United States v. Tardif*. *See* 57 M.J. 219, 223–24 (C.A.A.F. 2002).

I must disagree with the opinion of the court that the convening authority's decision "met the legacy requirements" of Article 60, UCMJ, 10 U.S.C. § 860 (*Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*)). Instead, I agree with the Government's show cause order response that Appellant's case should be reviewed for plain error as was done in *United States v. Finco*, No. ACM S32603, 2020 CCA LEXIS 246 (A.F. Ct. Crim. App. 27 Jul. 2020) (unpub. op.).

In *Finco*, a panel of our court found plain or obvious error because a convening authority "cannot simultaneously 'take no action on the sentence' and satisfy Exec. Order. 13,825, § 6(b)(1), 83 Fed. Reg. 9889, 9890 (8 Mar. 2018), which 'requires action by the convening authority on the sentence.'" *Id.* at *12. The conclusion of error in *Finco* was consistent with the earlier decision of our sister-service court in *United States v. Coffman*, 79 M.J. 820 (A. Ct. Crim. App. 2020). The court in *Coffman* held that "indicating 'N/A' or stating 'No Action' does not constitute taking action in a case." *Id.* at 823.

Here, the convening authority's decision memorandum states that the convening authority took no action in this case. While this wording varies slightly from *Finco*, in my view, failing to take action on "the case" also means failing

---

[1] U.S. CONST. amend. VIII.

[2] Unless otherwise specified, all references to the Uniform Code of Military Justice (UCMJ) and Rules for Courts-Martial (R.C.M.) in this opinion are to the *Manual for Courts-Martial*, *United States* (2019 ed.) (2019 *MCM*).

to take action on "the sentence" as required by Exec. Order. 13,825, § 6(b)(1). Therefore, I find error.

Appellant had an opportunity to address this error in the convening authority's decision memorandum with the military judge under Rule for Courts-Martial (R.C.M.) 1104(b)(2)(B). This rule provided Appellant a five-day window, after receipt, to assert the post-trial action by the convening authority was incomplete, irregular, or contained error. Appellant received the convening authority's decision memorandum on 14 February 2019. No post-trial motion was filed. The military judge signed the entry of judgment on 25 February 2019 which repeated that the convening authority took no action on the case.

More than a month after entry of judgment, on 28 March 2019, it was discovered that Appellant had not signed the 15 January 2019 submission of matters letter from the wing legal office. In response, Appellant's trial defense counsel signed a memorandum for "ALL REVIEWING AUTHORITIES" which noted the omitted signature but also stated: "On 23 January 2019, [Appellant] submitted [a] clemency request to the convening authority and requested that the convening authority defer the mandatory forfeitures of pay for a period of 30 days in his case. On 8 February 2019, the convening authority denied [Appellant]'s clemency request."

It is with this background that I assess whether Appellant waived or forfeited the error in the convening authority's decision memorandum which was repeated in the entry of judgment. The Government argues Appellant's failure to file a motion forfeited this error. I agree that forfeiture should be applied in this case. *See United States v. Lee*, No ACM. 39531, 2020 CCA LEXIS 61, at *17 (A.F. Ct. Crim. App. 26 Feb. 2020) (unpub. op.) (holding a Court of Criminal Appeals has the discretion to determine whether to apply waiver or forfeiture in a particular case or to pierce waiver or forfeiture to correct a legal error). I acknowledge that Appellant's trial defense counsel received an additional opportunity to raise this error when the missing signature on Appellant's submission of matters letter was noticed. Still, trial defense counsel's memorandum does not mention the wording of the convening authority's decision to take no action in the case. Under these circumstances, I do not see an intentional relinquishment or abandonment of a known right or privilege by Appellant in this case. *See United States v. Elespuru*, 73 M.J. 326, 328 (C.A.A.F. 2014) (citation omitted). I find Appellant forfeited his right to object to the accuracy of the convening authority's decision memorandum absent plain error.

To prevail under a plain error analysis, an appellant must show "(1) there was an error; (2) [the error] was plain or obvious; and (3) the error materially prejudiced a substantial right." *See United States v. LeBlanc*, 74 M.J. 650, 660 (A.F. Ct. Crim. App. 2015) (en banc) (quoting *United States v. Scalo*, 60 M.J.

435, 436 (C.A.A.F. 2005)). The Government argues that "lack of any recognition of this error by the parties and judge provides some evidence to this [c]ourt that, while there was error, such error was not plain or obvious." My esteemed colleague who also concurs in the result would not find plain error because the law has only become unsettled while Appellant's case was on appeal. *See* Posch, S.J., concurring in part and in the result, *infra*, at 42. However, I see the matter differently.

Exec. Order 13,825, § 6(b)(1), required action on the sentence by the convening authority under the prior version of Article 60, UCMJ. Action on the sentence under the prior version of Article 60, UCMJ, was not a new concept, but an old one. The words of the statute are specific; "Except as provided in paragraph (4) [of Article 60(c), UCMJ], the convening authority or another person authorized to act under this section may *approve, disapprove, commute, or suspend* the sentence of the court-martial in whole or in part." 10 U.S.C. § 860(c)(2)(B) (2016 *MCM*) (emphasis added). "Except as provided in subparagraph (B) or (C) [of Article 60(c)(4)], the convening authority or another person authorized to act under this section may not *disapprove, commute, or suspend* in whole or in part, an adjudged sentence of . . . [a] dishonorable discharge." 10 U.S.C. § 860(c)(4)(A) (2016 *MCM*) (emphasis added).

"We begin statutory analysis by examining the plain language." *United States v. Stout*, 79 M.J. 168, 171 (C.A.A.F. 2019). "The plain language will control, unless use of the plain language will lead to an absurd result." *Id*. (citing *United States v. Lewis*, 65 M.J. 85, 88 (C.A.A.F. 2007)). In my view the plain language of the prior version of Article 60, UCMJ, gave the convening authority four choices when taking action on the sentence: approve, disapprove, commute, or suspend. In this applicable version of Article 60, UCMJ, Congress did not use words like "deny relief," "effectuate the sentence," or "take no action."

This record of trial contains several references that show, at times, it was understood that the convening authority's action would "approve" a sentence. These references are in (1) the pretrial agreement and its Appendix A; (2) the submission of matters letter to Appellant from the wing legal office; and (3) the post-trial rights advisement given to Appellant by his trial defense counsel. When the military judge reviewed Appendix A to the pretrial agreement prior to adjourning the court, he stated "So my understanding of the effect of the pretrial agreement on the sentence is that the *convening authority may approve the sentence.*" (Emphasis added). The military judge asked whether counsel for both sides agreed with that interpretation. They did. This is not a situation where a long-standing precedent was suddenly reversed or called into question on appeal.

After considering the record of trial in this case, I conclude the failure to take action "in the case" was a plain or obvious error. I see little need to look beyond the plain language of the prior version of Article 60, UCMJ, to determine what a convening authority is required to do when taking action on the sentence under that statute. I observe no absurd result by requiring the convening authority to use the words in the statute rather than other ambiguous wording with questionable applicability.

I would also apply the threshold of "some colorable showing of possible prejudice" as the appropriate standard for an error impacting an appellant's request for clemency. *See LeBlanc*, 74 M.J. at 660 (quoting *Scalo*, 60 M.J. at 436). In applying this standard to this case, I would find no colorable showing of possible prejudice, in contrast to the result in *Finco*. The reasons are not complex. Appellant in this case was sentenced to a dishonorable discharge, confinement for eight months, and reduction to the grade of E-1. In his clemency request, the only thing that Appellant requested was a deferral of the mandatory forfeitures of pay for 30 days. There is no question that the convening authority denied this request explicitly in his decision memorandum. There is no question that Appellant's trial defense counsel understood the convening authority denied Appellant's clemency request as this was written in trial defense counsel's memorandum that was submitted after entry of judgment. In *Finco*, there was uncertainty on whether the convening authority made a decision on the clemency request. Unpub. op. at *16. There is no such uncertainty in this case. Therefore, I concur in the result of affirming the findings and sentence reflected in the entry of judgment.

It is unnecessary to engage in a point-by-point exchange with my esteemed colleagues who hold different views of the law in this area than I do. Brief comments will suffice.

For the opinion of the court, I cannot join the conclusion that the convening authority's decision met the legacy requirements of the prior version of Article 60, UCMJ. This would require me to forget how a convening authority took action on the sentence under Article 60, UCMJ, by approving some or all of the sentence. I also cannot join the conclusion that the convening authority complied with R.C.M. 1109[3] in the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*). I cannot see a simple way to reconcile portions of this rule, which redefined what it meant to take action completely, with the specific direction Exec. Order 13,825, § 6(b)(1), provided to take action on the sentence under the prior version of Article 60, UCMJ. In my view, R.C.M. 1109 in the

---

[3] The PTA's post-trial misconduct provision in this case cites R.C.M. 1109, apparently from the 2016 *MCM*, rather than R.C.M. 1108 in the 2019 *MCM*.

2019 *MCM* requires some adjustment to address its applicability to cases where action is required on the sentence by law and that task is best left to the Joint Service Committee on Military Justice.

I now turn to the opinion of my esteemed colleague who also concurs in part and in the result, *infra*, which states that the convening authority took no action on the sentence but this decision "fully complied" with the President's implementation of the Military Justice Act of 2016. Posch, S.J., concurring in part and in the result, *infra*, at 43. I have considered the critiques of the analysis in *Finco* presented here and in the earlier concurring opinion in *United States v. Barrick*, No. ACM S32579, 2020 CCA LEXIS 346, at \*9–24 (A.F. Ct. Crim. App. 30 Sep. 2020) (Posch, S.J., concurring in the result) (unpub. op.). After fair consideration, I am unpersuaded that the convening authority fully complied with the law in this case.

For my esteemed colleagues who dissent in part and in the result, I have only one minor quibble with what I will describe as the "fundamental misstep" position. To me, it seems to give little meaning to the new post-trial motions process available under R.C.M. 1104(B)(2)(B) where an appellant can raise a concern to the military judge with any post-trial action by the convening authority that is incomplete, irregular, or contains error. This procedural mechanism—available to *Finco*, *Barrick*, and Appellant—was not a part of the system for cases with a traditional action referred before 1 January 2019. As I see it, the new post-trial motions process should be part of our analysis of our discretion to apply waiver or forfeiture. In those cases where we exercise our discretion to apply forfeiture, I would test for a colorable showing of possible prejudice.

POSCH, Senior Judge (concurring in part and in the result):

For the most part, I agree with my esteemed colleagues in their resolution of the issue that Appellant personally raises about the conditions of post-trial confinement at the Okaloosa County (Florida) Department of Corrections. Judge Annexstad, joined by a majority of the judges on this court, considers Appellant's outside-the-record declaration to determine that sentence relief is not warranted under this court's Article 66(d)(1), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(d)(1), mandate to approve only so much of a sentence that, "on the basis of the entire record, should be approved." Other than trial defense counsel's generalized statements as part of Appellant's clemency submission that the prison conditions were "less than ideal" and "far below the standards of any military corrections facility," Appellant claimed no specific deficiencies or relief from the convening authority. Because the record does not contain actionable information about the conditions, I would find that

this court cannot consider new statements of fact in Appellant's declaration as part of our Article 66(d)(1), UCMJ, sentence appropriateness review. *See United States v. Jessie*, 79 M.J 437, 441–42 (C.A.A.F. 2020); *see also United States v. Willman*, No. ACM 39642, 2020 CCA LEXIS 300, at *21–26 (A.F. Ct. Crim. App. 2 Sep. 2020) (unpub. op.). Nonetheless, in harmony with those decisions and the opinion of the court, I agree that Appellant is not entitled to relief under Articles 12 and 55, UCMJ, 10 U.S.C. §§ 812, 855, and the Eighth Amendment,[1] or for the time it took this court to consider his appeal and conduct our statutory review. *See United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006); *United States v. Tardiff*, 57 M.J. 219 223–24 (C.A.A.F. 2002).

I also agree with the opinion of the court that it was not error, much less plain error, for the convening authority to effectuate Appellant's adjudged sentence by taking "no action" in Appellant's case. However, I write separately because I cannot resolve how Article 60, UCMJ, 10 U.S.C. § 860 (*Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*)), governed the convening authority's decision on action, and not Article 60, UCMJ, contained in the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*),[2] even though we reach the same result. To be sure, if legacy provisions of Article 60 (2016 *MCM*) were operable to guide the convening authority here—as the opinion of the court finds, and as Chief Judge J. Johnson and Senior Judge Lewis conclude in their separate opinions that they do—then it would follow that "[a]ction on the sentence . . . shall be taken." Article 60(c)(2)(A), UCMJ, 10 U.S.C. § 860(c)(2)(A) (2016 *MCM*). "Action" on the sentence as that term is used in the 2016 *MCM* means to "approve, disapprove, commute, or suspend the sentence of the court-martial in whole or in part," Article 60(c)(2), 10 U.S.C. § 860(c)(2), and the convening authority indicated none of these when he took "no action" in Appellant's case.

Although Article 60, UCMJ (2019 *MCM*), is not the route taken by the opinion of the court or by the separate opinions in our decision, I conclude it is the path that the convening authority took and was the right path to follow in the post-trial processing of Appellant's case, and I harbor no doubt he dutifully adhered to this track without error.

---

[1] U.S. CONST. amend. VIII.

[2] Unless otherwise noted in this opinion, all references to the convening authority's powers and responsibilities in "Article 60," UCMJ, in the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*), are to Articles 60a and 60b, UCMJ, 10 U.S.C. §§ 860a, 860b, as applicable.

**A. Overview**

Twenty-four days after Appellant pleaded guilty and was sentenced, the convening authority effectuated the sentence as adjudged. The convening authority did so by signing a "Decision on Action" memorandum taking "no action in the case."[3] His decision was in every respect consistent with Service policy in Air Force Instruction (AFI) 51-201, *Administration of Military Justice*, Section 13D (18 Jan. 2019), which closely tracked implementation of the Military Justice Act of 2016 (MJA),[4] and guided "convening authorities to specify 'no action' if not granting relief," as found by this court's majority opinion in *United States v. Barrick*, No. ACM S32579, 2020 CCA LEXIS 346, at *3–4 (A.F. Ct. Crim. App. 30 Sep. 2020) (unpub. op.). Undoubtedly, the convening authority's "no action" decision was formalized with the assistance of the command's staff judge advocate (SJA) and her staff, whose advice conformed to Service policy and the President's implementation of the MJA on which it was based. *See* Rule for Courts-Martial (R.C.M.) 1109(d)(2)[5] ("In determining whether to take action, or to decline taking action under this rule, the convening authority shall consult with the staff judge advocate or legal advisor.").

Within five days after receiving the convening authority's decision, Appellant did not raise a motion with the military judge under R.C.M. 1104(b)(2)(B), which suggests that Appellant either had no reason to believe at the time that the convening authority's decision was "incomplete, irregular, or contain[ed] error" or that he suffered any prejudice. Even on appeal, Appellant identifies no error, plain or otherwise, that would rebut a presumption of regularity in the manner by which the convening authority effectuated Appellant's sentence after receiving the advice of his SJA. *See United States v. Wise*, 20 C.M.R. 188, 194 (C.M.A. 1955) ("[T]he presumption of regularity requires us to presume that [the convening authority] carried out the duties imposed upon him by the Code and the Manual."); *see also United States v. Scott*, 66 M.J. 1, 4 (C.A.A.F. 2008) (applying a "presumption of regularity" to the convening authority's decision (internal quotation marks and citation omitted)).

After Appellant's case was submitted for our review, this court issued its decision in *United States v. Finco*, No. ACM S32603, 2020 CCA LEXIS 246

---

[3] On the face of it, the convening authority's decision reached both the findings of guilty and the adjudged sentence. However, the opinion of the court and the separate opinions focus on the "no action" determination on the sentence as do I.

[4] *See* National Defense Authorization Act for Fiscal Year 2017 (FY17 NDAA), Pub. L. No. 114-328, §§ 5001–5542 (23 Dec. 2016).

[5] Unless otherwise noted, references to the Rules for Courts-Martial (R.C.M.) are to the 2019 *MCM*.

(A.F. Ct. Crim. App. 27 Jul. 2020) (unpub. op.), on which my esteemed colleague, Senior Judge Lewis, relies in his separate opinion, *supra.* In that decision, a three-judge panel of this court found that the convening authority's decision to take no action on an appellant's sentence was a plain or obvious error and remanded. *Id.* at *15. The *Finco* court found "[i]n a case referred after 1 January 2019 where an accused is found guilty of a specification for an offense occurring before 1 January 2019" that the convening authority was required to apply Article 60 (2016 *MCM*), *id.* at *12, and not Article 60 in the 2019 *MCM*, and thereby failed to properly effectuate the sentence. *Id.* at *16 ("[Because] the convening authority failed to take action on the entire sentence—as his memorandum indicates he did—then we are unsure whether he made a decision on Appellant's clemency request."). The *Finco* court applied the standard for prejudice—"some colorable showing of possible prejudice," *id.* at *15–16— that our superior court, the United States Court of Appeals for the Armed Forces (CAAF), determined was appropriate for defects in a staff judge advocate's recommendation (SJAR), *see, e.g., United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998) (citing *United States v. Chatman*, 46 M.J. 321, 324 (C.A.A.F. 1997)), or the addendum to the SJAR, *see, e.g., Chatman*, 46 M.J. at 324, even though the supposed error in the decision memorandum was neither.[6]

In partial agreement with *Finco*, and in response to this court's order to show cause in Appellant's case, the Government concedes that the convening authority erred by taking "no action," but disagrees that the error was plain[7] or that Appellant was prejudiced. In its answer to the order the Government asserts the convening authority "should have approved the sentence" as was required by Article 60, UCMJ (2016 *MCM*). Chief Judge J. Johnson and Senior

---

[6] Additionally, the convening authorities in *Chatman* and *Wheelus* were empowered with plenary discretion to affect both the findings and sentence by Article 60, UCMJ, that was germane for offenses committed before changes to Article 60 took effect on 24 June 2014, which greatly limited that power in later cases like *Finco*'s and Appellant's. *See* Pub. L. No. 113–66, § 1702, 127 Stat. 672, 958 (26 Dec. 2013) (National Defense Authorization Act for Fiscal Year 2014 (FY14 NDAA)). Our superior court has cited that "highly discretionary" power in pre-FY14 NDAA cases as the reason why there is material prejudice to the substantial rights of an appellant if there is an error in the staff judge advocate's recommendation or the addendum and the appellant makes some colorable showing of possible prejudice. *See, e.g., United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000) (quoting *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998)).

[7] The Government's brief contends that "such error was not plain or obvious," but gives no reason for the conclusion.

Judge Lewis agree with the Government's concession. Chief Judge J. Johnson and three of our colleagues who join his opinion find the convening authority's error was so serious as to be, in effect, structural,[8] and would remand without evaluating for prejudice because the convening authority's decision "was at best an ambiguous and defective execution of the requirement that he take action on the sentence."

I disagree with the Government's concession and the view of the majority of the judges on this court that the convening authority erred by taking "no action," and thereby failed to effectuate the sentence as adjudged. First, I explain why the convening authority's decision complied with the MJA, as implemented by the President effective on 1 January 2019 in Exec. Order 13,825, §§ 3(a), 5, and 6(b), 83 Fed. Reg. 9889, 9890 (8 Mar. 2018). Second, and related, I again make clear a difference of opinion with this court's *Finco* decision that reached the opposite conclusion in a case similar to Appellant's and upon which Senior Judge Lewis again relies. *See Barrick*, unpub. op. at *11, 17–24 (Posch, S.J., concurring in the result). Third, I depart from the separate opinion of Senior Judge Lewis, concurring in part and in the result, *supra*, which, like this court's *Finco* decision, I find misapplies the plain error standard of review.

Resolution that the convening authority did not err turns on understanding several provisions of the President's implementation of Article 60, UCMJ, in the 2019 *MCM*, above all, Exec. Order 13,825, §§ 5 and 6(b), 83 Fed. Reg. at 9890. Because I conclude that the convening authority's decision memorandum was altogether in accordance with the President's implementation and the law, the convening authority did not err, much less commit plain error, by taking "no action" on the sentence that was adjudged in Appellant's case.

## B. Amendment to Article 60, UCMJ, in the MJA

Appellant was convicted of offenses he committed after 24 June 2014, which is the effective date of Article 60, UCMJ, in the 2016 *MCM*.[9] In courts-

---

[8] Chief Judge J. Johnson's opinion does not contend that the error was "structural," or even of a constitutional dimension, but the consequence is analogous. "Structural errors are those constitutional errors so affecting the framework within which the trial proceeds, that the trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *United States v. McMurrin*, 70 M.J. 15, 19 (C.A.A.F. 2011) (alterations, internal quotation marks, and citations omitted).

[9] *See* FY14 NDAA, Pub. L. No. 113-66, § 1702, 127 Stat. 672, 958 (26 Dec. 2013) (establishing 24 June 2014 as the effective date for Article 60, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 860, as it appears in the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*)).

martial for offenses occurring on and after this date, and before implementation of the MJA, a convening authority was required to take action to effectuate the sentence in every court-martial case.[10] *See* Article 60(c)(2)(A), UCMJ (2016 *MCM*) ("Action on the sentence of a court-martial shall be taken by the convening authority . . . .").

The MJA changed this requirement when Congress amended Article 60, UCMJ, as it appears in the 2019 *MCM*[11] to require "action" on the sentence if and only if a convening authority intends to grant relief by reducing, commuting, suspending, or in some cases, by disapproving a sentence, in whole or in part, as allowed for by law.[12] In accordance with the amended Article 60 in the 2019 *MCM*, a convening authority's formal refusal to act—that is, declination to act by taking "no action" on the sentence—effectuates the adjudged sentence in the same way that a convening authority once approved the sentence without modification under the former Article 60, UCMJ (2016 *MCM*). This change is perhaps most clearly stated in Article 60a(f)(2), UCMJ, in the 2019 *MCM* by the conditional language: "*If*, under this section, the convening authority reduces, commutes, or suspends the sentence, the decision of the convening authority shall include a written explanation of the reasons for such action." 10 U.S.C. § 860a(f)(2) (emphasis added).[13] After the convening authority's decision, the judgment of the court-martial consists of the adjudged sentence listed in the Statement of Trial Results as modified by "*any* post-trial action by the convening authority." Article 60c(a)(1)(B)(i), UCMJ, 10 U.S.C. § 860c(a)(1)(B)(i) (2019 *MCM*) (emphasis added).

---

[10] Before the effective date of the Military Justice Act of 2016 (MJA), a convening authority was required to either approve the sentence of the court-martial, or, subject to limits on that authority as provided by law, disapprove, commute, or suspend the sentence, in whole or in part. *See, e.g.*, Article 60(c)(2) and (c)(4), UCMJ, 10 U.S.C. § 860(c)(2), (c)(4) (2016 *MCM*). Importantly, and as later discussed in this opinion, a convening authority has the statutory authority pursuant to Article 60 in the 2016 *MCM* to take action pursuant to the terms of a pre-trial agreement with an accused. *See, e.g.*, Article 60(c)(4)(C), UCMJ, 10 U.S.C. § 860(c)(4)(C) (2016 *MCM*). No similar power conferred on a convening authority is found in the 2019 *MCM*.

[11] The amendment to Article 60, UCMJ, was among the many changes that Congress directed in the MJA that were subsequently expanded to several articles and incorporated in the 2019 *MCM*.

[12] *See also* Articles 60a and 60b, UCMJ, 10 U.S.C. §§ 860a, 860b (2019 *MCM*). In certain cases the convening authority may also act to "disapprove" a sentence in whole or in part. *See* Article 60b(a)(1)(C)–(F), UCMJ, 10 U.S.C. § 860b(a)(1)(C)–(F) (2019 *MCM*).

[13] *See also* Article 60a(a)(1)(A), UCMJ, 10 U.S.C. § 860a(a)(1)(A) (2019 *MCM*) (subject to limitations, a convening authority "*may* act on the sentence of the court-martial" (emphasis added)).

For many years, military justice practitioners have been accustomed to thinking of "action" as effectuating the sentence—whether by granting relief or not—as this term appears in editions of the *Manual for Courts-Martial* before the 2019 *MCM*. This legacy and more comprehensive definition gave way to a more specific meaning in the MJA and the President's implementation of the Act. Although not expressly defined, taking "action" in the 2019 *MCM* reveals it to mean "granting relief" each and every time that a convening authority decides to take action on the sentence in a particular case. Conversely, in accordance with Article 60 in the 2019 *MCM,* a convening authority's "no action" decision on the sentence results in an entry of judgment (EoJ) that reflects the sentence adjudged by the court-martial without modification, as it did here.

In Appellant's case, the language of the convening authority decision to take "no action" on the adjudged sentence is synonymous with not granting relief. By deciding to take no action the convening authority followed the post-trial procedures that Congress directed in the MJA, notably Article 60 in the 2019 *MCM*, and not the legacy procedures in Article 60 in the 2016 *MCM*. As a result, the question of whether the convening authority's decision memorandum contains error turns on the post-trial procedures that Congress and the President intended the convening authority to follow. Answering this question requires review of the convening authority's decision in light of the President's implementation of the MJA. If taking "no action" complied with the implementation of the Act, as I conclude that it did, then there is no error to evaluate for harmlessness or to correct on appeal or by remand to the military judge.

## C. Implementation of the MJA: Executive Order 13,825

In the MJA, Congress assigned to the President considerable discretion to set the effective date of the amendments to the UCMJ and to prescribe the regulations implementing those amendments.[14] However, that discretion was bounded by a date by which implementation must be completed. With few limitations, Congress directed that the implementation "shall take effect" no later than 1 January 2019, which included changes to Article 60, UCMJ (2019 *MCM*), in the manner by which a convening authority effectuates a sentence

---

[14] *See* FY17 NDAA, Pub. L. No. 114-328, § 5542; *see also* Article 36(a), UCMJ, 10 U.S.C. § 836(a), in the 2016 and 2019 *MCMs* (President may prescribe regulations for post-trial procedures); *United States v. Bartlett*, 66 M.J. 426, 428 (C.A.A.F. 2008) (the authority to prescribe regulations prevails "insofar as such regulations are not inconsistent with the UCMJ").

without modification (i.e., as adjudged).[15] The President then exercised this authority by issuing Executive Order 13,825 and new Rules for Courts-Martial that are listed in Annex 2 of the Executive Order and that were subsequently promulgated in Part II of the 2019 *MCM.* In accordance with the direction given by Congress to the President, Exec. Order 13,825, § 5, effected these rules for cases referred to trial by court-martial on and after 1 January 2019.[16] The new rules implement the amendments made by Congress in Article 60 in the 2019 *MCM,* as discussed, and include considerable revisions in the manner by which the convening authority effectuates an appellant's sentence after one has been adjudged.

Among the rules that took effect on 1 January 2019 for cases referred on and after that date are R.C.M. 1109 and 1110 that guide a convening authority's decision whether to take action on an adjudged sentence.[17] Following the new procedures in those rules, which implement and track the amendments that Congress made to Article 60 that were incorporated in the 2019 *MCM,* the convening authority does not effectuate a sentence by taking action unless the convening authority intends to reduce, commute, or suspend, or in some cases, disapprove, a sentence, in whole or in part. R.C.M. 1109(c)(5)(A), (g)(2); R.C.M. 1110(c), (e). Under these rules, a "convening authority is no longer required to take action on the results of every court-martial." *United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at *3 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.) (citing R.C.M. 1109 and 1110 (2019 *MCM*)). Instead, a convening authority may decline to take action after consulting with the SJA and considering any clemency matters timely submitted

---

[15] The FY17 NDAA, including the MJA in Division E of the NDAA, was enacted on 23 December 2016. "Except as otherwise provided in this division, the amendments made by this division shall take effect on the date designated by the President, which date shall be not later than the first day of the first calendar month that begins two years after the date of the enactment of this Act." *See* FY17 NDAA, Pub. L. No. 114-328, § 5542(a).

[16] *See* Exec. Order 13,825, § 5, 83 Fed. Reg. 9889, 9890 (8 Mar. 2018) (incorporating in the 2019 *MCM* new Rules for Courts-Martial among the amendments in Annex 2, that "shall take effect on January 1, 2019," subject to exceptions that are not applicable here); *see also* FY17 NDAA, Pub. L. No. 114-328, § 5542(c)(2) (stating MJA amendments to the UCMJ "shall not apply to any case in which charges are referred to trial by court-martial before the effective date of such amendments").

[17] *See* Exec. Order 13,825, § 5, 83 Fed. Reg. at 10040–43 (implementing R.C.M. 1109, *Reduction of sentence, general and special courts-martial*); 10043–44 (implementing R.C.M. 1110, *Action by convening authority in certain general and special courts-martial*).

26

by an accused. R.C.M. 1109(c), (d), (g); R.C.M. 1110(c)(1) ("action on the sentence is not required"); *see also Moody-Neukom*, unpub. op. at *3.

## D. Application of the MJA, as Implemented, to Appellant's Case

One turns then to consider the effect of the President's implementation of the MJA in Executive Order 13,825 on the post-trial procedures that are applicable to Appellant's case. Here, the charges and specifications were referred to trial by general court-martial on 4 January 2019. Thus, the convening authority was required to follow the procedural provisions in the 2019 *MCM* that went into effect on 1 January 2019, notably R.C.M. 1109 and 1110 that are germane to a convening authority's power and responsibility in post-trial processing. In accordance with these rules, unless the convening authority had determined to grant relief,[18] the convening authority was under no obligation to act on the sentence after Appellant was tried and sentenced on 15 January 2019.

In compliance with R.C.M. 1109 and 1110, the convening authority took no action on the adjudged sentence when he signed the decision memorandum on 8 February 2019, thereby indicating a formal determination that sentencing relief was not warranted in Appellant's case. Subsequently, the military judge signed the EoJ faithfully reflecting the judgment of the court-martial. Consequently, the convening authority's "no action" decision in compliance with the President's implementation of the MJA, as made plain in R.C.M. 1109 and 1110, was not error. It follows that, in this regard, the judgment entered by the military judge in Appellant's case is correct.[19]

### 1. *United States v. Finco*

Nonetheless, this conclusion that the convening authority did not err because he followed Article 60, UCMJ, and R.C.M. 1109 and 1110 as implemented by the President in the 2019 *MCM*, parts ways with the opinion of the court here and in *Barrick*, which find that the convening authority's decision was not error because it met the requirements of Article 60, UCMJ (2016 *MCM*); *see Barrick*, unpub. op. at *3 ("The convening authority's decision met the requirements of Article 60, UCMJ, 10 U.S.C. § 860 (2016 *MCM*) inasmuch as it required 'action' in this case."). It also invites comparison to this court's

---

[18] The convening authority had the power to reduce, commute, or suspend, in whole or in part, Appellant's reduction in grade only. *See* R.C.M. 1109(c)(5) (2019 *MCM*).

[19] I agree with the opinion of the court that the EoJ fails to document Appellant's request for deferment of mandatory forfeitures and the convening authority's decision on Appellant's request as required by R.C.M. 1111(b)(3)(A).

decision in *Finco* that reached a different result on similar facts and on which Senior Judge Lewis relies in his separate opinion, *supra.*

Appellant, like the appellant in *Finco*, was convicted of offenses that were committed on or after 24 June 2014[20] and before 1 January 2019, and referred after that date. *See Finco*, unpub. op. at *3–4, 12. The military judge in *Finco* sentenced the appellant to a bad-conduct discharge, confinement for five months, reduction to the grade of E-1, and a reprimand. *Id.* at *1–2. After reviewing that appellant's clemency matters, the convening authority signed a decision memorandum that stated, "I take no action on the sentence of this case." *Id.* at *2. The same day that the convening authority signed his decision memorandum, the military judge signed the EoJ. *Id.* In *Finco*, this court determined that "the decision to take no action on the sentence was a plain or obvious error" and remanded the case to the Chief Trial Judge, Air Force Trial Judiciary, "to resolve a substantial issue with the convening authority's decision memorandum as no action was taken on Appellant's adjudged sentence as required by law." *Id.* at *15, 20–21.

This court's *Finco* decision did not rely on R.C.M. 1109 and 1110 in the 2019 *MCM*, or attach any significance to the President's implementation of these rules in Exec. Order 13,825, § 5. Instead, *Finco* singularly focused on § 6(b) of this same Executive Order. *Id.* at *8, 12. As applicable to cases like Appellant's and *Finco* where there is a conviction for at least one offense committed before 1 January 2019 that was referred on or after that date, § 6(b) guides a convening authority to apply the legacy provisions of Article 60 in the 2016 *MCM*, in certain prescribed circumstances. Section 6(b) states in pertinent part:

> If the accused is found guilty of a specification alleging the commission of one or more offenses before January 1, 2019, Article 60 of the UCMJ, as in effect on the date of the earliest offense of which the accused was found guilty, shall apply to the convening authority . . . to the extent that Article 60:
>
> (1) requires action by the convening authority on the sentence
> . . . .

Exec. Order 13,825, § 6(b), 83 Fed. Reg. at 9890 (8 Mar. 2018).

By the terms of § 6(b), the convening authority in *Finco* and in Appellant's case was required to follow Article 60 as it appears in the 2016 *MCM*, but only

---

[20] Because the court's opinion referenced Article 60, UCMJ, in the 2016 *MCM*, *see United States v. Finco*, No. ACM S32603, 2020 CCA LEXIS 246, at *8 (A.F. Ct. Crim. App. 27 Jul. 2020) (unpub. op.), which was effective on 24 June 2014, FY14 NDAA, Pub. L. No. 113-66, § 1702, 127 Stat. 672, 958 (2013), we can presume that the appellant in *Finco* committed the charged offenses no earlier than on or after that date.

"to the extent that" Article 60 "*requires* action by the convening authority on the sentence." (Emphasis added). If effectuating a sentence does not *require* a convening authority to take action, then § 6(b)'s direction to a convening authority to follow "Article 60 of the UCMJ, as in effect on the date of the earliest offense of which the accused was found guilty," is inapposite.

*Finco* looked to the language in Article 60 in the 2016 *MCM*, and found the necessary words of obligation in Article 60(c)(2)(A), UCMJ, that it determined bound the convening authority to effectuate the sentence whether granting relief or not. This provision states without qualification that "[a]ction on the sentence of a court-martial shall be taken by the convening authority."[21] *See Finco*, unpub. op. at *8. By looking to Article 60(c)(2)(A) in the 2016 *MCM* to understand § 6(b) of the Executive Order, a convening authority would have to disregard the President's implementation of R.C.M. 1109 and 1110 that went into effect on 1 January 2019 in every case where there is a conviction for at least one offense committed before, and referred on or after, that date. Paradoxically, effective on the same date that the President's implementation of these rules went into effect, *Finco*'s reasoning found them inapplicable and would nullify their application in cases in which a convening authority determines that granting sentencing relief is not authorized or warranted. It does so despite any indication of such intent in the text of the Executive Order.

Without question, a convening authority cannot "take no action on the sentence" in compliance with R.C.M. 1109 and 1110 in the 2019 *MCM*, and at the same time satisfy the language in Article 60(c)(2)(A), UCMJ, in the 2016 *MCM*. Thus, I cannot agree with the opinion of the court that, unlike this court's opinion in *Finco*, does not explain how it reached its conclusion. However, *Finco* made an assumption that a convening authority was bound by Article 60(c)(2)(A), finding that "the convening authority cannot simultaneously 'take no action on the sentence'" and satisfy the *Finco* court's *interpretation* of the language of the President's implementation in § 6(b). The *Finco* court concluded, "[W]e need look no further than the plain language of the decision memorandum and determine that the convening authority erred when he purported to take no action on the sentence when Exec. Order 13,825, § 6(b)(1),

---

[21] The *Finco* court found solidarity with a decision by our sister-service court in *United States v. Coffman*, 79 M.J. 820 (A. Ct. Crim. App. 2020), in which a convening authority took no action by indicating "N/A" to denote "action on the findings and/or sentence." *Finco*, unpub. op. at *12–13 (quoting *Coffman*, 79 M.J. at 821); *see also id*. at *13 (agreeing with the *Coffman* court's finding that "the convening authority 'erred in his noncompliance' with the earlier version of Article 60, UCMJ, . . . that required action on the sentence" (quoting *Coffman*, 79 M.J. at 822)).

required him to do so." *Finco,* unpub. op. at *12. Although unstated in its decision, it is apparent that the *Finco* court found the language of § 6(b) plain as well to reach the conclusion that the convening authority's error was so clear as to be plain and obvious.

The *Finco* decision did not address what in my mind is an unmistakable contradiction between the President's implementation of R.C.M. 1109 and 1110 in Exec. Order 13,825, § 5, on the one hand, and the *Finco* court's reading of Exec. Order 13,825, § 6(b), on the other. In the case before us as in *Finco,* the convening authority cannot abide by the President's implementation of the specific provisions of R.C.M. 1109 and 1110 in § 5 by taking no action on the sentence and at the same time have a duty to act in every case so as to effectuate a sentence, which the *Finco* court found by its reading of § 6(b) that looked to Article 60(c)(2)(A) in the 2016 *MCM.* The *Finco* decision also failed to explain how its interpretation complied with Congress' direction to the President to implement the MJA by 1 January 2019, notably the post-trial procedures that Congress directed convening authorities to follow to effectuate a sentence.

In reaching the conclusion that the convening authority was required to take action on the sentence, *Finco* interpreted one part of the President's implementation so as to render another part, § 5, inconsequential in cases, like Appellant's, where there is a conviction for at least one offense committed before 1 January 2019 that was referred on or after that date, and the convening authority determines no sentencing relief is warranted. By taking "no action" in compliance with R.C.M. 1109 and 1110 in the 2019 *MCM* as the President intended in Exec. Order, § 5, the *Finco* court would find error in an essential and recurring post-trial responsibility that was directed by Congress in the MJA: the manner by which convening authorities effectuate sentences for convictions for pre-1 January 2019 offenses that are referred on and after that date.

Of greater significance, the assignment by Congress to the President to designate the effective date of the MJA amendments was not without limitation. As previously noted, Congress directed that the President's implementation of the Act "shall take effect" not later than 1 January 2019.[22] The amendments to the UCMJ include changes Congress made to the procedural provisions in Article 60 whereby a convening authority may take no action to effectuate a sentence. But the *Finco* court's interpretation of Exec. Order 13,825, § 6(b)(1), would require a convening authority to continue to take action on a sentence

---

[22] *See* FY17 NDAA, Pub. L. No. 114-328, § 5542(a).

in accordance with the legacy provisions of Article 60 until the date of the earliest conviction is on or after 1 January 2019. Thus, if the *Finco* court's interpretation of Exec. Order 13,825, § 6(b), was correct, it would operate to delay implementation of a key MJA provision well past 1 January 2019.[23] With few exceptions, notably Exec. Order 13,825, §§ 6(a), 9, and 10, the President's implementation of the MJA applies to offenses committed or alleged before 1 January 2019. 83 Fed. Reg. at 9890–91. However, the provisions implemented by exception in §§ 6(a), 9, and 10 relate to important substantive rights of an accused that go beyond the form by which Congress intended a convening authority to effectuate a sentence as is the case here. The President may well have intended these few exceptions were necessary so that an accused would get the benefit of significant legacy provisions in the UCMJ that protect important substantive rights and at the same time comply with the implementation timeline that Congress directed.

Importantly, if the President had intended the changes to the manner by which a convening authority effectuates a sentence in Article 60 in the 2019 *MCM* to begin on or after 1 January 2019, one might reasonably conclude that the President would have done so expressly instead of—as the *Finco* court's interpretation would require—by implication. Thus, a delayed implementation in the manner by which a sentence is effectuated in the 2019 *MCM* would raise questions not just about the responsibility of a convening authority under the President's implementation of the MJA, but also, and more fundamental, whether the President's implementation schedule was in compliance with Congress' direction that the President shall implement the Act not later than 1 January 2019.

### 2. Executive Order 13,825

Executive agencies "must always 'give effect to the unambiguously expressed intent of Congress.'" *Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 326 (2014) (quoting *National Assn. of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 665 (2007)). The CAAF has similarly cautioned that it "has no license . . . to construe statutes in a way that 'undercut[s] the clearly expressed intent of Congress.'" *United States v. McPherson*, 73 M.J. 393, 396 (C.A.A.F.

---

[23] Notably, it is incongruent that, effective 1 January 2019, Congress would eliminate in the MJA the requirement that a convening authority consider the written recommendation of a staff judge advocate before acting on the sentence in a general court-martial or any special court-martial case that includes a bad-conduct discharge, as required by legacy provisions of Article 60, *see, e.g.*, Article 60(e), UCMJ, 10 U.S.C. § 860(e) (2016 *MCM*), but still require a convening authority to take action to effectuate all sentences.

2014) (quoting *United States v. Bartlett*, 66 M.J. 426, 428 (C.A.A.F. 2008) (alteration in original)).

The CAAF has recognized that ordinary rules of statutory construction are helpful "when analyzing a rule promulgated by the President," which would seemingly embrace analysis of an executive order like the one here. *United States v. Murphy*, 74 M.J. 302, 305 (C.A.A.F. 2015) ("[I]n determining the scope of a statute, we look first to its language" and "apply the same interpretive process when analyzing a rule promulgated by the President." (internal quotation marks omitted)); *see also United States v. Fetrow*, 76 M.J. 181, 185–86 (C.A.A.F. 2017) (rules of statutory construction are helpful in analyzing provisions of the *Manual for Courts-Martial*). It follows then that judicial review of the President's Executive Order implementing the MJA is not unlike review of an agency's construction of a statute.

When two provisions "initially appear to be in tension," the provisions should be interpreted in a way that render them compatible, not contradictory.[24] *United States v. Kelly*, 77 M.J. 404, 407 (C.A.A.F. 2008) ("[T]his Court typically seeks to harmonize independent provisions of a statute." (citing *United States v. Christian*, 63 M.J. 205, 208 (C.A.A.F. 2006)). "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Kelly*, 77 M.J. at 406–07 (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (internal quotation marks omitted)). "As is true of interpretation of statutes, the interpretation of an Executive Order begins with its text." *Bassidji v. Goe*, 413 F.3d 928, 934 (9th Cir. 2005) (citation omitted). Thus, when an interpretation of the text of one provision in an executive order works against another provision or an act of Congress, there is good reason to reject that interpretation and look for another.

The place to begin is with the text of the President's implementation. Sections 5 and 6(b) of the Executive Order initially appear to be in tension, so each provision will be examined in turn. The language of § 5 plainly implements the

---

[24] There may be essential differences between application of some interpretive canons to executive and legislative action. For example, the President's implementation of a rule in one provision of Exec. Order 13,825 (§ 5), and a statute on which the same rule depends in another provision (§ 6(b)) would not obviously trigger the "'hierarchical sources of rights' in the military justice system" whereby the highest source of authority is generally paramount. *See United States v. Czeschin*, 56 MJ 346, 348 (C.A.A.F. 2002). In the absence of language making it clear that the President's implementation of the statute controls over implementation of the rule, one cannot assume that the President intended that the former controls the latter in the same executive order promulgated under the same implementation authority assigned by Congress.

R.C.M. and the text is not subject to more than one possible meaning. It states that "[t]he amendments in Annex 2 [of Executive Order 13,825] . . . shall take effect on January 1, 2019." 83 Fed. Reg. at 9890. As previously discussed, Annex 2 includes the President's implementation of R.C.M. 1109 and 1110 in the 2019 *MCM* that went into effect for cases referred to trial by court-martial on and after 1 January 2019. The fact that § 5 enumerates three inapposite exceptions to the application of these amendments suggests that there are no other exceptions, lending further validity to the conclusion that the convening authority did not err when he followed R.C.M. 1109 and 1110 in effectuating the sentence adjudged in Appellant's case.

Whereas § 5 requires looking no further than that provision to determine its meaning and application, § 6(b), in contrast, directs practitioners to first look to the legacy provisions of Article 60, UCMJ, to resolve which version of Article 60 may apply to a particular case, and also, to what extent. This is so because § 6(b) states that "Article 60 of the UCMJ, as in effect on the date of the earliest offense of which the accused was found guilty, shall apply to the convening authority . . . *to the extent that Article 60 . . .* requires action by the convening authority on the sentence . . . ." *Id.* (emphasis added). The phrase "to the extent that" is one of limitation that precludes blanket application of legacy provisions of Article 60. It plainly encompasses conditions in which no legacy provision of Article 60 will apply. This qualifying language makes clear that individual provisions of Article 60 in the 2019 *MCM* will bind a convening authority unless any one of several conditions is present in Article 60, UCMJ, as was in effect on the date of the earliest offense. First among these conditions is if a legacy provision of an earlier version of Article 60 "requires action by the convening authority on the sentence." Exec. Order 13,825, § 6(b)(1), 83 Fed. Reg. at 9890.

Taking "action," as discussed earlier, has a precise, specialized meaning in the 2019 *MCM* that differs from its more comprehensive meaning to effectuate a sentence in all cases before the MJA's implementation. Thus, a full understanding of the applicability of § 6(b) to Appellant's case entails an examination of Article 60 in the 2016 *MCM* for a circumstance in which a convening authority is required to grant relief (i.e., take action) on the sentence. If such a circumstance was present in a case like Appellant's—where at least one offense was committed on or after 24 June 2014 and before 1 January 2019, that was referred on or after that date—then a convening authority might be required to take action on the sentence by following one or more provisions of Article 60 in the 2016 *MCM*. Such a circumstance would be within the meaning of the President's implementation in § 6(b).

One such circumstance that protects a critical right of an accused is the convening authority's legal duty to honor and effectuate a pretrial agreement

(PTA). A convening authority has no statutory or regulatory authority under any specific provision in the 2019 *MCM* to effectuate a sentence limitation of a PTA, known as a "plea agreement" in the MJA. Instead, such agreements have binding effect upon their acceptance by a military judge.[25] An accused automatically gets the benefit of the agreement without the convening authority having to take action or approve a sentence to comply with the agreement. However, this novel approach to the manner by which agreed-upon sentence limitations are enforced in the MJA takes effect only in cases unlike Appellant's "in which all specifications allege offenses committed on or after January 1, 2019." *See* Exec. Order 13,825, § 10, 83 Fed. Reg. at 9890–91. Conversely, in cases like Appellant's where there is a conviction for at least one offense committed after 24 June 2014 and before 1 January 2019 that was referred on or after that date, a PTA may be consequential and the convening authority would be required to follow the legacy provisions of Article 60 (2016 *MCM*), and take action to both honor and effectuate a sentence as agreed to in the PTA. This is perhaps best illustrated by two examples that show the different applications of Article 60. The first example closely tracks Appellant's case in which the convening authority properly applied Article 60 and R.C.M. 1109 and 1110 from the 2019 *MCM.* The second example reveals when a convening authority would be required to apply Article 60 and R.C.M. 1107[26] from the 2016 *MCM* if Appellant's sentence had been different.

Here, Appellant was convicted of offenses committed before 1 January 2019 that were referred after that date. Appellant's adjudged sentence that included confinement for eight months was less than the one-year limitation on confinement in Appellant's PTA. It follows then that granting sentencing relief (i.e., taking action) was not *required* under Article 60 in the 2016 *MCM* that was in effect on the date of Appellant's earliest offense. Because the convening authority was not compelled to follow any legacy provisions of Article 60 that predate

---

[25] *Compare* Article 53a(d), UCMJ, 10 U.S.C. § 853a(d) (2019 *MCM*), *and* R.C.M. 1002(a)(2) (2019 *MCM*), *and* R.C.M. 1005, Discussion (2019 *MCM*), *with* Article 60(c)(4)(C), UCMJ (2016 *MCM*), *and* R.C.M. 1107(d)(1)(C)(ii) (2016 *MCM*).

[26] R.C.M. 1107 implements Article 60 in the 2016 *MCM*. R.C.M. 1107(d)(1)(C)(ii) guides a convening authority to act on a sentence limitation in a PTA. It states,

> *Pretrial agreement.* If a pretrial agreement has been entered into by the convening authority and the accused, as authorized by R.C.M. 705, the convening authority or another person authorized to act under this rule shall have the authority to approve, disapprove, commute, or suspend a sentence, in whole or in part, pursuant to the terms of the pretrial agreement.

implementation of Article 60 in the 2019 *MCM*, the convening authority could effectuate Appellant's sentence, as he did, by taking no action in accordance with Article 60 and R.C.M. 1109 and 1110 as incorporated in the 2019 *MCM*.

Conversely, if Appellant's adjudged sentence exceeded this one-year limitation (e.g., 15 months), then the convening authority would have been *required* to follow Article 60 and R.C.M. 1107 in the 2016 *MCM* "to the extent that Article 60 . . . *requires action by the convening authority on the sentence*" as directed by Exec. Order, § 6(b)(1). (Emphasis added). This is so because there is no legal authorization in the 2019 *MCM* for the convening authority to honor the agreement and effectuate the sentence—as there is in the 2016 *MCM*—by either granting clemency[27] or enforcing a sentence limitation in a PTA.[28] In such a case the convening authority would be *required* to grant relief (i.e., take action) on the sentence by following Article 60 in effect on the date of the earliest offense.[29] Without the legacy provision in Article 60 that allows the convening authority to take the required action on the sentence,[30] the convening authority would be in breach of the PTA if Article 60 (2019 *MCM*) was the only legal authority the convening authority had to effectuate a sentence.

---

[27] In cases like Appellant's, a convening authority has no authority in the 2019 *MCM* to reduce or commute a sentence of confinement, if the total period of confinement imposed for all offenses is greater than six months. *See* Article 60a(b)(1)(A), 10 U.S.C. § 860a(b)(1)(A), and R.C.M. 1109(c)(5)(A) (2019 *MCM*) (permitting a convening authority to "reduce, commute, or suspend, in whole or in part" the confinement portion of a sentence that is *six months or less*).

[28] In cases like Appellant's, there is no provision in the 2019 *MCM* that is similar to Article 60(c)(4)(C), UCMJ (2016 *MCM*), that would authorize a convening authority to honor and effectuate an agreed-upon sentencing limitation in a PTA:

> If a pre-trial agreement has been entered into by the convening authority and the accused, as authorized by Rule for Courts-Martial 705, the convening authority or another person authorized to act under this section shall have the authority to approve, disapprove, commute, or suspend a sentence in whole or in part pursuant to the terms of the pretrial agreement . . . .

Article 60(c)(4)(C), UCMJ (2016 *MCM*). Notably, Appellant's PTA provided that the convening authority "agrees to, if adjudged, approve no sentence of confinement in excess of one (1) year, in accordance with R.C.M. 1107(d)(1)(C)(ii)," which implements Article 60(c)(4)(C) (2016 *MCM*), and was the correct authority to cite.

[29] Of note, nothing in the MJA or the President's implementation of the Act operate to repeal the R.C.M. that applied Article 60 in effect before 1 January 2019.

[30] *See, e.g.*, Article 60(c)(4)(C), UCMJ (2016 *MCM*).

In cases that are referred to trial on or after 1 January 2019, there can be no mistaking Congress' intent that a convening authority's taking "no action" on the sentence effectuates the adjudged sentence in the same way that a convening authority once approved the sentence without modification under the former Article 60 (2016 *MCM*). And, there is no mistaking Congress' assigning to the President the authority to implement the MJA, consistent with this intent, no later than 1 January 2019. Significantly, perhaps, the CAAF has looked to dates of legislative enactment when it "harmonize[s] independent provisions of a statute." *Christian*, 63 M.J. at 208 ("It is a well-established principle of statutory construction that, absent a clear direction of Congress to the contrary, a law takes effect on the date of its enactment." (citations omitted)). Additionally, our superior court has "continually reiterated that the Uniform Code of Military Justice controls when an executive order conflicts with part of that Code." *United States v. Pritt*, 54 M.J. 47, 50 (C.A.A.F. 2000) (citing *United States v. Gonzalez*, 42 M.J. 469, 474 (1995); *United States v. Mance*, 26 M.J. 244, 252 (1988)).

Here, there is no conflict between the President's implementation of the MJA in Executive Order 13,825 and Article 60 (2019 *MCM*) so long as Exec. Order, §§ 5 and 6(b), are each given "full force and effect," *Kelly*, 77 M.J. at 407, on 1 January 2019. Under Exec. Order, § 6(b)(1), a convening authority looks to the legacy provisions of Article 60 to the extent that a convening authority may be required to take action on the sentence. Because taking "action" in the 2019 *MCM* means "granting relief," practitioners accustomed to "action" being synonymous with effectuating the results of a court-martial in a pre-2019 *MCM* provision may best relate to the contemporary meaning of "action" if § 6(b)(1) is restated thusly,

> If the accused is found guilty of a specification alleging the commission of one or more offenses before January 1, 2019, Article 60 of the UCMJ, as in effect on the date of the earliest offense of which the accused was found guilty, shall apply to the convening authority . . . to the extent that Article 60:
>
> (1) requires [granting relief] by the convening authority on the sentence[31]
>
> . . . .

Exec. Order 13,825, 83 Fed. Reg. at 9890.

---

[31] Or, to rephrase grammatically, ". . . requires the convening authority to grant relief on the sentence."

This reading of § 6(b)(1) affords "action" its new meaning that is narrower than its legacy use in prior editions of the *Manual. See United States v. Andrews*, 77 M.J. 393, 400 (C.A.A.F. 2018) (questions of interpretation should begin and end with the text, "giving each word its ordinary, contemporary, and common meaning" (quoting *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017))). "[I]t's a 'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary . . . meaning . . . at the time Congress enacted the statute.'" *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019) (alteration in original) (quoting *Wisconsin Central Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018)). And sometimes, "[w]ords in statutes can enlarge or contract their scope as other changes, in law or in the world, require their application to new instances or make old applications anachronistic." *West v. Gibson*, 527 U. S. 212, 218 (1999) (citation omitted). Giving "action" a contemporary meaning is not only coherent with the new use of the term in Article 60, UCMJ, and R.C.M. 1109 and R.C.M. 1110 in the 2019 *MCM*, it is also consistent with the use of the term where it appears again in Exec. Order 13,825, § 6(b)(2), which authorizes a convening authority to follow a legacy provision of Article 60 to the extent that it "*permits* action by the convening authority on the findings." 83 Fed. Reg. at 9890 (emphasis added). A contemporary understanding of "action" as synonymous with granting relief renders § 6(b)(2) to mean that it "permits a convening authority to disapprove a finding of guilty or approve a finding of guilty only of a lesser offense" in cases in which a legacy provision of Article 60 grants an accused this right.[32]

Most significantly, a contemporary reading avoids a de facto nullification of the President's implementation of R.C.M. 1109 and 1110 in every case where there is a conviction for at least one offense committed before, and referred on or after 1 January 2019, and a convening authority determines action on the sentence is not warranted. It makes little sense for the President to implement

---

[32] *See, e.g.*, Article 60(c)(3), UCMJ, 10 U.S.C. § 860(c)(3), as it appears in the *Manual for Courts-Martial*, *United States* (2012 ed.) (2012 *MCM*), which gives plenary authority to a convening authority to approve or disapprove the findings of a court-martial:

> Action on the findings of a court-martial by the convening authority or other person acting on the sentence is not required. However, such person, in his sole discretion, may—(A) dismiss any charge or specification by setting aside a finding of guilty thereto; or (B) change a finding of guilty to a charge or specification to a finding of guilty to an offense that is a lesser included offense of the offense stated in the charge or specification.

Articles 60a and 60b, UCMJ, 10 U.S.C. §§ 860a, 860b, and R.C.M. 1109 and 1110 effective on 1 January 2019, and then hold their application in abeyance without some positive statement of intent to that effect in the implementation, as was the case for other articles of the UCMJ and Rules for Courts-Martial.[33] Moreover, this reading of § 6(b)(1) affords an accused a substantive right to have a convening authority honor a PTA—and not merely specifying the manner by which a convening authority effectuates a sentence—that is in harmony with other substantive provisions of § 6(b) that also protect an accused's rights under legacy provisions of Article 60.[34,35]

---

[33] *See* Exec. Order, § 10(b) stating that new Rules for Courts-Martial implementing new articles that change sentencing procedures apply "only to cases in which all specifications allege offenses committed on or after January 1, 2019." *See also*, Exec. Order, § 6(a), "The amendments to Articles 2, 56(d), 58a, and 63 of the UCMJ enacted by sections 5102, 5301, 5303, and 5327 of the MJA apply only to cases in which all specifications allege offenses committed on or after January 1, 2019." Notably, Articles 60a and 60b, UCMJ (2019 *MCM*), are not among the UCMJ provisions that the President implemented effective 1 January 2019, and then expressly held their application in abeyance until all findings of guilty are to offenses that an appellant commits on or after the date of implementation.

[34] The guidance in Exec. Order, § 6(b), addresses an accused's substantive rights in regard to the findings (Subsection (2)), the adjudged sentence (Subsections (1) and (5)), both the finding and the sentence (Subsection (3)), and a proceeding in revision or a rehearing (Subsection (4)) under prior versions of Article 60 that were in effect on the date of an earlier offense. *See* Exec. Order 13,825, § 6(b)(1)–(5), 83 Fed. Reg. at 9890.

[35] Although questions about the meaning and applicability of the President's implementation of the MJA can be resolved without looking beyond the text of each, it is instructive that Congress intended an accused to benefit from previous amendments to Article 60, UCMJ (2012 *MCM*). When Congress substantially limited a convening authority's ability to approve findings and sentences under Article 60, UCMJ (2016 *MCM*), in the FY14 NDAA, Pub. L. No. 113–66, § 1702, 127 Stat. 956–57 (26 Dec. 2013), it directed the change to be applied prospectively "with respect to an offense . . . committed on or after" the effective date. In the next fiscal year's NDAA, Congress addressed the applicability of Article 60 (2016 *MCM*) when offenses straddled the FY14 NDAA's effective date:

> With respect to the findings and sentence of a court-martial that includes both a conviction for an offense committed before [24 June 2014] and a conviction for an offense committed on or after that effective date, the convening authority shall have the same authority to take action on such findings and sentence as was in effect on the day before such effective date[.]

National Defense Authorization Act for Fiscal Year 2015, Pub. L. No. 113–291, § 531, 128 Stat. 3292, 3365 (19 Dec. 2014).

Finally, affording "action" a contemporary meaning in the President's Executive Order reveals that the *Finco* court's reliance on Article 60(c)(2)(A), UCMJ (2016 *MCM*), to understand when a convening authority's action on the sentence may be required is inapt. As noted previously, this provision states without qualification that "[a]ction on the sentence of a court-martial shall be taken by the convening authority." Because taking "action" in the 2019 *MCM* means "granting relief," application of a contemporary meaning to this legacy provision of Article 60 (2016 *MCM*) would require a convening authority to grant relief in every case, which is an unreasonable result that the President could not have intended when he issued Exec. Order 13,825. *See United States v. Ortiz*, 76 M.J. 189, 192 (C.A.A.F. 2017) ("From the earliest times, we have held to the 'plain meaning' method of statutory interpretation. Under that method, if a statute is unambiguous, the plain meaning of the words will control, so long as that meaning does not lead to an absurd result."), *aff'd*, 138 S. Ct. 2165 (2018).

In summary, in cases like Appellant's where there is a conviction for at least one offense committed before 1 January 2019 that was referred on or after that date, a convening authority follows Article 60 (2019 *MCM*) and R.C.M. 1109 and 1110 that implement the new Article 60 unless an appellant benefits from the discretion that Congress conferred on a convening authority in a prior version of Article 60 that was in effect when an appellant committed the earliest offense. If the convening authority determines that granting sentencing relief (i.e., action) is not required under that earlier version of Article 60, for example, to enforce a limitation on sentence in a PTA, or that relief that a convening authority has the power to grant is not warranted upon consideration of an appellant's clemency submission and other matters, then the convening authority follows Article 60 and R.C.M. 1109 and 1110 in the 2019 *MCM* to effectuate the sentence. If, however, the convening authority determines that action on the sentence is required under the version of Article 60 in effect on the date of the earliest offense because granting relief is required to effectuate the sentence—as may be the case with a sentence limitation in a PTA—then the convening authority is required to follow a provision in an earlier version of Article 60 and the corresponding R.C.M. that give effect to the convening authority's statutory responsibility to act on the sentence.

**E. Plain Error Standard of Review as Applied to Appellant's Case**

As a final matter, I also depart from Senior Judge Lewis' separate opinion concurring in part and in the result, *supra*, which, like this court's *Finco* deci-

sion, I find misapplies the plain error standard of review, and that would remand an appellant's record to the Chief Trial Judge, Air Force Trial Judiciary, upon a *sua sponte* finding of some colorable showing of possible prejudice.[36]

Seven months before this court decided *Finco*, but still after the convening authority effectuated Appellant's sentence, a panel consisting of three different judges of this court than the judges empaneled to decide *Finco* issued its decision in *Moody-Neukom*. In that case, the convening authority "elected to take no action with respect to the findings or sentence," and thereby effectuated a sentence that consisted of a bad-conduct discharge, confinement for one month, and reduction to the grade of E-1. *Moody-Neukom*, unpub. op. at \*1. Like the appellants in *Finco* and *Barrick*, and Appellant's case, the appellant in *Moody-Neukom* was found guilty of offenses he committed before 1 January 2019 that were referred after that date. *Id.* at \*2. *Moody-Neukom* was submitted to this court for review on its merits without any assignments of error. *Id.* at \*1.

In conducting our review of *Moody-Neukom*,[37] we looked favorably on the decision of the convening authority to apply the procedural provisions of R.C.M. 1109 and 1110 in the 2019 *MCM* to effectuate the sentence by taking "no action." *Id.* at \*8. In concluding that the findings and sentence as entered by the military judge were correct in law and fact, and that no error materially prejudicial to the appellant's substantial rights occurred, *id.*, we observed the following:

> Under the new procedures, the convening authority is no longer required to take action on the results of every court-martial. *See* R.C.M. 1109; R.C.M. 1110. Instead, as in this case, the convening authority may, after consulting with the staff judge advocate or legal advisor and considering any matters timely submitted by the accused or a crime victim, decline to take action on the sentence. R.C.M. 1109(c), (d), (g).

---

[36] Senior Judge Lewis concludes there was no prejudice to Appellant because there was no uncertainty whether or not the convening authority made a decision on Appellant's clemency request to defer mandatory forfeiture. It is only because the convening authority denied that request in writing as required by R.C.M. 1103(d)(2), that the separate opinion found no prejudice. Based on this rubric, prejudice would be evident unless a convening authority grants clemency relief or denies a deferment when effectuating a sentence, or perhaps if an appellant waives clemency.

[37] Like the Appellant in the case before us, the appellant in *Moody-Neukom* did not raise the issue of the applicability of Article 60, UCMJ (2019 *MCM*) and R.C.M. 1109 and 1110 (2019 *MCM*) with this court. However, unlike the detailed analysis in the case under consideration here, our opinion concluded that the convening authority properly followed these new provisions to effectuate an appellant's sentence.

*Id.* at *3.

In the case before us, the convening authority did not have the benefit of this court's conflicting decisions in *Moody-Neukom*, *Finco*, and *Barrick* when he consulted with his SJA before issuing his Decision on Action. Before this court issued its *Finco* decision, no opinion of this court or our superior court had addressed the duty and responsibility of a convening authority to effectuate a sentence in accordance with the President's implementation of the MJA. Under a presumption of regularity, the convening authority and the SJA on which he relied for advice would have looked for guidance in AFI 51-201, Section 13D, which instructed "convening authorities to specify 'no action' if not granting relief," as found by this court's majority opinion in *Barrick*, unpub. op. at *3–4. As the opinion of the court sensibly suggests in the case before us, the convening authority likely relied on this guidance and then "expressed his decision to not grant relief as 'no action.'" I agree and reach the same conclusion, and harbor doubt that this court can properly reconcile presumption of regularity with a finding of plain error on a matter that was not an issue in any appellate court when the convening authority effectuated Appellant's sentence after he consulted with his SJA in February 2019.

After the conclusion of his court-martial, Appellant did not raise a motion under R.C.M. 1104(b)(2)(B) to challenge the form or legality of the convening authority's decision on action. Under like circumstances, this court's *Finco* decision found plain error as to the decision to take no action on the sentence. *See Finco*, unpub. op. at *15. To establish plain error, an appellant must show: "(1) error that is (2) clear or obvious and (3) results in material prejudice to his substantial rights." *United States v. Armstrong*, 77 M.J. 465, 469 (C.A.A.F. 2018) (citation omitted). In assessing plain error, the CAAF will "consider whether the error is obvious at the time of appeal, not whether it was obvious at the time of the court-martial," *United States v. Harcrow*, 66 M.J. 154, 159 (C.A.A.F. 2008), or more to the point in the case before us, at the time the convening authority effectuated Appellant's sentence.

To determine whether error is "clear and obvious" at the time of appeal, the CAAF will consider, among other circumstances, whether Courts of Criminal Appeals have "reached conflicting conclusions on the question" that is in issue. *United States v. Gonzales*, 78 M.J. 480, 486–87 (C.A.A.F. 2019). It stands to reason that error premised on a conclusion of law by one panel of a Court of Criminal Appeals that directly conflicts with another is neither clear nor obvious.

Before today, this court issued three unpublished opinions, *Moody-Neukom, Finco,* and *Barrick*, which, as Chief Judge J. Johnson observes as to the

latter two, "came to very different conclusions." Of the three, *Finco* is the outlier in finding plain error. Our sister-service court in *United States v. Coffman*, 79 M.J. 820 (A. Ct. Crim. App. 2020), reached a decision that was similar to *Finco* in finding error. I am not aware of any opinion of our superior court or other opinion of our sister courts that address how a convening authority effectuates a sentence under the President's implementation of the MJA. Because of the conflict in this court's decisions it is noteworthy that my esteemed colleagues call upon the Joint Service Committee on Military Justice (Senior Judge Lewis' opinion, *supra*) or our superior court to help our court in "settling the law in this area," (according to Chief Judge J. Johnson, *infra*), respectively. Entreaties such as these are hardly grounds upon which to set a course for plain error.

Because the convening authority correctly applied existing law as reflected in AFI 51-201 that guides convening authorities to specify "no action" if not granting relief, it would seem that the law became unsettled in our jurisdiction when this court issued its *Finco* decision while Appellant's case was on appeal. I would find, then, that Appellant cannot satisfy the second prong of the plain error test—that the error be clear or obvious under existing law. Thus, remand of the record to the Chief Trial Judge, Air Force Trial Judiciary, is not appropriate. This is so even if there was error to correct on appeal as is the view of a majority of the judges on this court.

**F. Conclusion**

Although the path taken by the opinion of the court is different from my own, I concur in the result that the convening authority did not commit error when he effectuated Appellant's sentence by taking "no action in the case." There is no tension, much less contradiction, with Exec. Order 13,825, § 5, or other provisions of the President's implementation of the MJA, so long as taking "action" on the sentence is given its contemporary meaning, "granting relief," where the term "action" appears in Exec. Order 13,825, § 6(b)(1). In the case before us, the convening authority granted no relief so he took no action.

I do not reach the question of prejudice, however. In many if not all cases referred on and after 1 January 2019, it may not matter if it is determined whether or not a convening authority erred in cases like Appellant's where no action is taken, or conversely, a case where a convening authority approves the sentence even though the applicable provision of Article 60 does not require action to effectuate the sentence. What matters is that a convening authority makes clear whether sentencing relief has been granted an appellant and to what extent. So long as the sentence that the convening authority intended to

effectuate is apparent from the decision memorandum,[38] an appellant may not be prejudiced even if a convening authority's compliance with Executive Order 13,825 may be interpreted differently by Courts of Criminal Appeals or within such Courts.

Unlike the view of the majority of my esteemed colleagues, I find that the convening authority fully complied with the President's implementation of the MJA, and did not err by taking "no action" on the sentence that was adjudged after Appellant's trial, and that the military judge correctly entered as the judgment of the court-martial.

J. JOHNSON, Chief Judge (concurring in part and dissenting in part), joined by Senior Judge MINK, Judge KEY, and Judge CADOTTE:

I concur with the opinion of the court with respect to the conclusion that Appellant is not entitled to relief for the conditions of his post-trial confinement or facially unreasonable appellate delay. However, I cannot agree with the conclusion that there was "no error" when the convening authority purported to "take no action" in Appellant's case.

Article 60a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 860a, which went into effect on 1 January 2019, does not require the convening authority to take action on the sentence of a court-martial. *See also* R.C.M. 1109(g) (explaining procedures depending on whether or not the convening authority "decides to act on the sentence" in certain courts-martial); R.C.M. 1110(e) (explaining procedures depending on whether or not the convening authority decides to take action on the findings or sentence in certain courts-martial).[1] The convening authority "may act on the sentence" only as provided in subsections (b), (c), or (d) of Article 60a, UCMJ, which control the extent to which the convening authority may reduce, commute, or suspend the sentence. 10 U.S.C. § 860a(a)(1)(A). Under current law, the convening authority is required to make a decision whether to act, which must be provided to the military judge, accused, and victim of any offense. 10 U.S.C. § 860a(f)(1).

However, as the opinion of the court describes, the version of Article 60, UCMJ, 10 U.S.C. § 860, in effect prior to 1 January 2019 did require the convening authority to take action on the sentence of a court-martial in every case, regardless of whether the convening authority intended to modify the sentence

---

[38] *See, e.g., United States v. Politte*, 63 M.J. 24, 26 (C.A.A.F. 2006) (requiring a "clear and unambiguous convening authority action").

[1] References in this opinion to the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

or not. *See* 10 U.S.C. § 860(c)(2)(A) (*Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*) ("Action on the sentence of a court-martial shall be taken by the convening authority or by another person authorized to act under this section.") Furthermore, Executive Order 13,825, § 6(b), requires that the version of Article 60, UCMJ, in effect on the earliest date of any offense of which the accused was convicted "shall apply to the convening authority . . . to the extent that Article 60: (1) requires action by the convening authority on the sentence. . . ." *See* 2018 Amendments to the *Manual for Courts-Martial, United States*, 83 Fed. Reg. 9889, 9890 (1 Mar. 2018).

In the instant case, the earliest date of an offense of which Appellant was convicted is 6 January 2018. Therefore, in accordance with the Executive Order, the version of Article 60, UCMJ, in effect prior to 1 January 2019 applied to the convening authority to the extent that it required him to take action. Before 1 January 2019, Article 60, UCMJ, required the convening authority to take action in every case. Yet in this case, the convening authority signed a "Decision on Action"—as if he were operating under the post-1 January 2019 Article 60a, UCMJ—in which he affirmatively stated "I hereby take no action" in Appellant's case.

Appellant's is not the first case in which this court has addressed such a situation. *See, e.g., United States v. Barrick*, No. ACM S32579, 2020 CCA LEXIS 346 (A.F. Ct. Crim. App. 30 Sep. 2020) (unpub. op.); *United States v. Finco*, No. ACM S32603, 2020 CCA LEXIS 246 (A.F. Ct. Crim. App. 27 Jul. 2020) (unpub. op.). Our prior decisions have produced three interpretations of a convening authority's stated decision to take "no action" where at least one offense predates 1 January 2019. Those three interpretations are reflected in the opinion of the court and the two opinions concurring in the result in the instant case.

On one end of the spectrum is the majority opinion in *Barrick*, which concluded the convening authority's decision to take no action was "the equivalent of action," and "met the requirements of Article 60, UCMJ . . . inasmuch as it required 'action' in this case." *Barrick*, unpub. op. at *4. *Barrick* further found that the convening authority's decision "also complied with the provisions of R.C.M. 1109, requiring convening authority action only when affecting the sentence," as well as Air Force Instruction (AFI) 51-201, *Administration of Military Justice*, Section 13D (18 Jan. 2019), which "advises convening authorities to specify 'no action' if not granting relief" under the applicable version of Article 60. *Id*. In *Barrick*, the majority concluded "[t]he convening authority's action to provide no relief was 'clear and unambiguous,'" and there was no error to correct. *Id*. at *5 (citing *United States v. Politte*, 63 M.J. 24, 25−26 (C.A.A.F. 2006)). In other words, the Executive Order and its reference to the prior version of Article 60, UCMJ, simply required the convening authority to make a

clear and unambiguous decision regarding whether to grant sentence relief; the convening authority's decision not to grant relief, expressed as a decision to take "no action," was legally sufficient under Article 60, UCMJ, as well as consistent with the current versions of R.C.M. 1109 and AFI 51-201. The opinion of the court in the instant case adopts a similar analysis and conclusion.

Senior Judge Posch's opinion concurring in the result in *Barrick*, which he restates here in Appellant's case, espoused a different interpretation. *Barrick*, unpub. op. at *11–44 (Posch, S.J., concurring in the result). Like the majority opinion, the concurring opinion found no error by the convening authority. *Id.* at *43–44. Unlike the majority opinion, it found the convening authority's determination not to take action was not "action" within the meaning of the prior version of Article 60, UCMJ. *Id.* at *21. However, it determined this was proper, because it discerned the intent of the Executive Order was not to require action in every case where an offense occurred prior to 1 January 2019. *Id.* at *25–33. Instead, the Executive Order's direction that the prior Article 60, UCMJ, applies "*to the extent that [it] requires action* by the convening authority on the sentence" (emphasis added) meant, in the context of other provisions of the Executive Order and the current Rules for Courts-Martial, action was required only when the convening authority was "required to grant relief (i.e., take action) on the sentence." *Id.* at *34. In *Barrick*, the pretrial agreement had no effect on the sentence the convening authority could approve; therefore:

> Because the convening authority was not compelled to follow any legacy provisions of Article 60 that predate implementation of Article 60 in the 2019 MCM, the convening authority could effectuate the sentence, as he did, by taking no action in accordance with Article 60 and R.C.M. 1109 and 1110 as codified in the 2019 MCM.

*Id.* at *36.[2]

In *Finco*, a different panel of this court came to very different conclusions. *See Finco*, unpub. op. at *11–17. Unlike the majority opinion in *Barrick*, but like the concurring opinion in *Barrick*, *Finco* found that the convening authority's statement "I take no action on the sentence of this case" was not taking "action" within the meaning of the prior version of Article 60, UCMJ. *Id.* at *2, *12–13; *see also United States v. Coffman*, 79 M.J. 820, 823 (A. Ct. Crim. App.

---

[2] The opinion states that "[u]nless otherwise noted . . . all references to the convening authority's powers and responsibilities in Article 60, UCMJ, in the 2019 MCM are to Articles 60, 60a, 60b, and 60c, UCMJ, 10 U.S.C. §§ 860, 860a, 860b, 860c, collectively." *Barrick*, unpub. op. at *8 n.4 (Posch, S.J., concurring in the result).

2020) ("[S]tating 'No Action' does not constitute taking action in a case.") However, unlike the concurring opinion in *Barrick*, *Finco* held that this failure to take action was error. *Finco*, unpub. op. at *12–13. Noting that the appellant had not challenged the convening authority's decision as "incomplete, irregular, or contain[ing] error" pursuant to R.C.M. 1104(b)(2)(B), *Finco* analyzed the convening authority's failure to act for plain error under the "colorable showing of possible prejudice" standard. *Id.* at *13–16 (quoting *United States v. Le-Blanc*, 74 M.J. 650, 660 (A.F. Ct. Crim. App. 2015) (additional citation omitted)). The court found such a colorable showing under the circumstances in *Finco*, reasoning: "If the convening authority failed to take action on the entire sentence—as his memorandum indicates he did—then we are unsure whether he made a decision on [the appellant's] clemency request which was within the convening authority's power to grant." *Id.* at *16.[3] Senior Judge Lewis's opinion concurring in the result in the instant case applies *Finco's* plain error analysis to the record before us, but unlike *Finco* finds no plain error in Appellant's case.

My own view differs from each of these three opinions, although it is closest to *Finco*. Like *Finco* (and *Coffman*), and unlike the majority opinion in *Barrick*, I conclude that a convening authority's statement that he or she takes "no action" on the results of a court-martial is not "action" within the meaning of the Executive Order or prior version of Article 60, UCMJ. Giving effect to the plain meaning of the convening authority's words, he made a decision not to take action on the sentence despite the requirement to do so. It appears to me Appellant's case was processed in accordance with the rules and procedures applicable to the post-1 January 2019 version of Article 60a, UCMJ—which does not require the convening authority to take action on the sentence—without taking into account the application of the prior version of Article 60, UCMJ, as the Executive Order requires.

Like *Finco* (and *Coffman*), and unlike Senior Judge Posch's concurring opinion in *Barrick* and in this case, I further conclude that the convening authority's failure to take action was an error. The concurring opinion in *Barrick* attempts at some length to reconcile the Executive Order's direction to apply the prior Article 60, UCMJ, "to the extent that" it requires action by the convening authority, with the current Rules for Courts-Martial and AFI 51-201, created in light of the post-1 January 2019 process under Article 60a, UCMJ, which does not require convening authority action. *See Barrick*, unpub. op. at

---

[3] As the opinion of the court notes, this court's decision in *Finco* evidently guided the Government's response to our show cause order in the instant case, in which the Government conceded error but argued corrective action was not required under a plain error standard of review.

*11–44 (Posch, S.J., concurring in the result). Yet, giving effect to the plain meaning of the words of the statute, the prior version of Article 60, UCMJ, requires action by the convening authority in every case. *See* 10 U.S.C. § 860(c)(2)(A) (2016 *MCM*) ("Action on the sentence of a court-martial shall be taken by the convening authority . . . ."); *see also United States v. Andrews*, 77 M.J. 393, 400 (C.A.A.F. 2018) (internal quotation marks and citations omitted) ("[C]ourts must give effect to the clear meaning of statutes as written and questions of statutory interpretation should begin and end . . . with [statutory] text, giving each word its ordinary, contemporary, and common meaning.").

However, unlike *Finco*, I do not believe testing for prejudice is the appropriate paradigm for resolving such errors. This court's mandate under Article 66(d)(1), UCMJ,[4] is to approve "only such findings of guilty, and the sentence or such part or amount of the sentence, as the Court finds correct in law and fact *and determines, on the basis of the entire record, should be approved.*" (Emphasis added). As the CAAF has made clear, our responsibility to determine whether the results of a court-martial "should be approved" is not simply a question of prejudice. *See, e.g., United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) (citation omitted) (holding a Court of Criminal Appeals has authority under Article 66, UCMJ, to grant relief without a showing of actual prejudice if it deems relief appropriate under the circumstances). Moreover, "[i]n some cases, maintaining the integrity of the military justice system enacted by Congress may require this court to take action that is not requested by any party." *United States v. Ramirez*, No. ACM S32538, 2020 CCA LEXIS 20, at *17 (A.F. Ct. Crim. App. 24 Jan. 2020) (unpub. op.) (citing *United States v. Montesinos*, 28 M.J. 38, 47 (C.M.A. 1989) (affirming Court of Criminal Review's decision vacating convening authority's *ultra vires* set aside of findings previously affirmed by the appellate court and rejecting the appellant's attempt to withdraw the case from appellate review)).

The convening authority's action is required to be "clear and unambiguous." *Politte*, 63 M.J. at 26. In the past, this court has repeatedly returned records of trial for remand to the convening authority to correct actions that were incomplete or defective, without analyzing whether the error had prejudiced the appellant. *See, e.g., Ramirez*, unpub. op. at *16–17 (convening authority's action granting deferment without request by appellant was ultra vires); *United States v. Smith*, No. ACM 39463, 2019 CCA LEXIS 307, at *7–8 (A.F. Ct. Crim. App. 12 Jul. 2019) (unpub. op.) (action failed to include illegal pretrial confinement credit), *rev. denied*, 80 M.J. 63 (C.A.A.F. 2020); *United States v. Del Toro*, No. ACM 39225, 2018 CCA LEXIS 219, at *2 (A.F. Ct. Crim. App. 27 Apr. 2018) (unpub. op.) (per curiam) (action undated); *United States v. Duran*, No. ACM

---

[4] Formerly under Article 66(c), UCMJ. *See* 2016 *MCM*.

S32407, 2017 CCA LEXIS 381, at *1–2 (A.F. Ct. Crim. App. 31 May 2017) (unpub. op.) (per curiam) (action failed to include deferment of reduction in grade); *United States v. Perea,* No. ACM S32408, 2017 CCA LEXIS 353, at *4–5 (A.F. Ct. Crim. App. 24 May 2017) (unpub. op.) (action failed to include deferment of reduction in grade). In the instant case, the convening authority's declaration that he "take[s] no action" was at best an ambiguous and defective execution of the requirement that he take action on the sentence in accordance with the Executive Order and Article 60, UCMJ; more likely, given the language used, the convening authority did not intend to take action at all because the requirement to do so was overlooked, and the case was erroneously processed entirely under the new statute and rules. The essential question is not whether the convening authority's intention to deny clemency was clear, or whether the error was obvious, or whether Appellant was prejudiced by the error. I do not believe we are required to, nor should we, tolerate such a fundamental misstep in military justice procedure. Accordingly, I would remand the record to the Chief Trial Judge, Air Force Trial Judiciary, to resolve the error.

One further point: these are new legal questions brought on by the changes in the law that went into effect on 1 January 2019. As described above, these questions have resulted in a diversity of opinions on the court. If, at some point, the CAAF were to address these questions, our superior court's guidance could go a long way toward settling the law in this area.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court